JOHN GLENN *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.—*December*, 1833.

The act of 1817, *ch.* 148, so far as regards the power of the *Mayor and City Council of Baltimore*, to pass ordinances for the prevention and extinguishment of fires, does not extend the previous powers conferred by the original charter of that city upon that subject.

Where an ordinance of the city of *Baltimore*, does not in terms disclose that it is in the fulfilment of some one of the specific powers granted by the charter of that city, or it is not so connected by its subject matter with the powers conferred, that the court can judicially determine it to be made in the exercise of its chartered privileges; it becomes a question of fact, whether such ordinance was properly passed or not; and the burthen of proof is upon the party claiming under it.

So where an ordinance prohibited the carrying on any distillery of spirits of turpentine or varnish, and did not purport to be passed for the prevention of fires, the court HELD, they would not judicially determine whether such prohibition was calculated to prevent danger from fires, but referred it to a jury to determine whether it was in any degree calculated to effect that object.

The ordinance of March, 1826, passed by the corporation of *Baltimore*, prohibiting the erecting, establishing, or rebuilding of certain factories within the limits of direct taxation in said city, was not intended to interfere with any then existing establishment, nor to prevent its being merely repaired; and where one of such factories was injured by fire, and its business stopped, it becomes a question of fact whether it was rebuilt or repaired. If the destruction was so great as to require the house in which it was carried on to be rebuilt, it must then come within the prohibition.

APPEAL from *Baltimore City Court.*

This is an action of *Debt* instituted by the appellees against the appellant, January 22d, 1833, to recover the sum of $200, in virtue of an ordinance of the 9th of March, 1826; whereby it was "enacted and ordained, that no person or persons should thereafter erect, establish, or rebuild, or carry on in such building within the limits of direct taxation, any distillery of spirits, or turpentine, or varnish, or manufactories either of earthen or stone wares, or or slaughter house or houses, or soap, or candle manufactory, under the penalty of $200; and a further sum of $50 for each and every month thereafter, until the same be removed out of the said limits, or pulled down."

The defendant pleaded *nil debet*, and issue was joined.

1. At the trial the plaintiff proved that the defendant owned a turpentine distillery within the taxable limits of the city of *Baltimore*; which on the 16th of December, 1832, was materially injured by fire. The witness proved, that two days after the fire, he examined the premises at the request of the *Mayor* of the city. He found the *north* gable end off to the square; the *east* end wall was about half down; the *south* gable end wall totally down; the front was standing, but partially injured by the fire; the wood work all burned. The body of the still was enclosed in brick, and was not from that circumstance susceptible of injury. Some slight injury was done to the cap, which was repaired, as was also the building, owing to which, and the inclemency of the weather, there was an interval, of a month before operations were resumed.

The plaintiff then prayed the court to instruct the jury,

that if they believe from the evidence, that the distillery, and messuage of the defendant, mentioned in the pleadings, and the evidence, were so much injured by fire, as to require repairs to the apparatus of the still, or any part of it, before it could be used; and that the building was burned, as is stated in the evidence; and that the defendant rebuilt the house, and repaired the apparatus, and has resumed by himself, his agents, or his tenants, the business of a turpentine distillery in the messuage so rebuilt, before the institution of this action, that then the plaintiffs are entitled to a verdict. Upon this prayer the court instructed the jury as follows. That if they should find from the testimony, that the defendant was the owner of the turpentine distillery mentioned in the declaration, and that the damage done to the building in which it was carried on, whether by fire or otherwise, was so considerable as to put a stop to the further prosecution of the business, whilst it remained in that condition; and that the defendant afterwards restored the said building to its former condition, by repairing the walls, and putting on a new roof, and thereupon resumed the distillery of turpentine or varnish in said building; he has thereby violated the ordinance of the 9th of March, 1826, referred to in the declaration, and is liable to the penalties for which this action is brought, and that the jury must find for the plaintiffs. If on the contrary, the testimony will not support the above, they must find for the defendant.

The defendant excepted, and the verdict and judgment being against him, he prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J., and MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Meredith* and *Johnson* for the appellant, contended.

1. That the section of the ordinance of the 9th of March, 1826, upon which this action is brought, is not within any of the powers conferred on the corporation by the charter,

or any supplement thereto, and is therefore void. Act of 1796, ch. 68; 1817, ch. 148, sec. 7; 1797, ch. 54, sec. 2.

2. That according to the true construction of said section, a total demolition of the building erected or established, was intended, and contemplated, and the court below erred in directing the jury, that if the said building was only partially injured by fire or otherwise, so as to put a stop to the carrying on the distillery whilst it remained so injured, the appellant had no right to repair the building, and re-sume the operations of said distillery.

*Scott* and *Belt*, for the appellees.

1. The authority of the corporation to pass the ordinance in question, is fully established by the cases of *The Mayor* and *City Council vs. Barron, survivor of Craig* and *Kos-ter*, decided by this court.

2. The ordinance though penal in its character, being cal-culated, and intended to promote the general welfare, is entitled to a liberal interpretation. 6 *Bac. Abr. Title Stat-ute*, 378, &c. *Mayor and City Council vs. Moore & John-son*, 6 *Harr. and Johns.* 380. *Dugan vs. Mayor and City Council*, 1 *Gill and Johns.* 499. It is shown by the evi-dence, that the injury was such as to interrupt for a conside-rable period the operations of the distillery; and it is no an-swer to say that the injury was confined to the building, as it is impossible to distinguish between the building and the ma-chinery. The establishment consists of both united, and nei-ther without the other could exist within the contemplation of the ordinance.

ARCHER, J., delivered the opinion of the court.

The instruction given by the court to the jury, and which forms the subject of inquiry, involves the considera-tion of the ability of the corporation, to prohibit the erec-tion, and establishment of a turpentine distillery, and the rebuilding of a distillery, which had been in operation pre-vious to the passage of the ordinance.

The corporation by its original charter possesses the power to pass by-laws, for the prevention, and extinguishment of fires, and to prevent and remove nuisances, and by the act of 1817, ch. 148, sec. 7, power is conferred upon the corporation in the following words. "The said *Mayor and City Council*, shall possess all power, necessary or proper, for preventing nuisances, preserving order, securing property and persons from violence, danger or destruction, protecting the public, and city property, rights and privileges, from waste or encroachment, and for promoting the great interests, and securing the good government of the city, not repugnant to the rights of the citizen, or inconsistent with the provisions of any act of the General Assembly of this State, or the constitution thereof." Under these various grants the power in question is claimed.

The act of 1817, in its clause above quoted, so far as regards the present question, perhaps does not confer any extended authority, and the power must rest on one of the two grants of power, which were originally given in the charter of 1796; *the power to prevent or remove nuisances, and the power to prevent fires.* On which of these the the claim to impose the penalty in question, is reposed by the city authorities does not appear. The ordinance of the 9th of March, 1826, contains *no* preamble reciting the existence of such distilleries as a nuisance, or that their establishment, or operation, were calculated to increase the dangers arising from fires, nor does the title of the ordinance indicate that it is in the fulfilment of any one specific power. We are therefore, left at large to examine the whole catalogue of powers to ascertain its validity, and we perceive no other grant of power upon which it could be sustained, but one of the two which have been mentioned.

The validity of many ordinances are at once perceived, because they appear upon the face of them to be in the execution of a delegated power. Of this character for example, would be such ordinances as relate to the laying out of new streets, the establishment of night watches, the erec-

tion of lamps, the providing for the general survey of the city, laws for cleaning and deepening the basin, and many other powers of the like description, which it is unnecessary to enumerate.

But the power to prevent fires, and the power to remove nuisances, are grants of a totally different description, and there may be just, necessary, and proper exercises of these powers, which the court cannot judicially see. Thus, whether the various manufactories spoken of in the 17th section of the ordinance, are calculated to endanger the habitations, or the health of the inhabitants, may be a matter of science, upon which possibly a diversity of views might be entertained, and thus the legitimate exercise of the power might become a mixt question of law, and of fact. The city authorities might pronounce that to be a nuisance, which evidence might show was not a nuisance. They might prohibit a particular occupation upon the ground, that it increased the danger of fire, when the reverse could be shown by the concurring testimony of all men. The power therefore, or the want of power to suppress a particular occupation as a nuisance, or as a means of preventing fire should be shown in the proof.

It is true the corporation have power to pass all laws, which are necessary or proper to carry into effect any given power, and the degree of its necessity or propriety would not be minutely, or critically scrutinized; but the court ought to see that it may be the means of accomplishing the object of the grant. The degree of the necessity would indeed be properly, perhaps, the subject for the judgment of the corporation, but that it contributes in any degree, would be for the determination of the court. Now that the prevention of such occupations, as are under certain circumstances prohibited by the ordinances under consideration, would in any degree be a means of preventing fires, or of removing nuisances, must be disclosed by evidence. None is produced, and we therefore think, upon this ground, the court were wrong in their direction to the jury, that if

they found the facts proven in the bill of exceptions to be true, they must find for the plaintiff.

We also conceive, that the court below erred in the construction which they put upon the 7th clause of the ordinance. That section is in the following words. "Be it enacted and ordained, that no person or persons shall hereafter erect, establish, or rebuild, or carry on in such building, within the limits of direct taxation, any distillery of spirits, or turpentine, or varnish, or manufactories either of earthen ware, or stone ware, or slaughter house or houses, or soap, or candle manufactory, under the penalty of two hundred dollars, and a further sum of fifty dollars for each and every month thereafter, until the same be removed out of said limits, or pulled down.

It was obviously not the intention of the corporation to interfere with any existing establishment, and it might perhaps be well questioned whether they could give a retrospective operation to the law. They aimed at the prohibition of any new establishment, and at the rebuilding of any old establishment. The repair of any manufactory of this description was not forbidden, nor could it well be. The stoppage of the distillery might be occasioned by a damage done to the building, and yet that building might only require repair, and not rebuilding. Thus, suppose the roof was so much consumed by fire, that the owner could not with advantage carry on his customary operations, could the reparation amount in legal contemplation to a rebuilding? This would be the mere amendment of the roof, or the putting a new roof on an old building, or in other words, repair, and not rebuilding. The difficulties attending the court's direction, grow out of their not having distinguished between the repair of the distillery, and its being rebuilt. Reparations, and rebuildings, sometimes, so nearly approximate to each other, that it may be said, they are separated by invisible lines, but in general, the distinction between these two words, is obvious to every man's understanding; and although it may sometimes be difficult to mark

the boundaries between them by intelligible definitions, we are inclined to think, that so far as regards the building in question, if its walls were injured, and thrown down to the extent of more than a half, and its roof destroyed, it could not be re-established otherwise than by *rebuilding*.

But it is supposed, that although the house in which the manufactory was carried on might have been rebuilt, yet as the distillery apparatus only required repair, and that only to the extent of nine-tenths of its value, that therefore the re-erection of the building, and the repair of the apparatus, did not render the proprietor obnoxious to the provisions of the ordinance. Were this construction to prevail, the ordinance might be rendered nearly ineffectual. The still itself is enclosed by a brick wall, and is the most costly part of the structure; and being thus protected, is scarcely susceptible of injury; for we perceive, notwithstanding this destructive fire, it was entirely uninjured. Repair, from time to time, to supply defects from gradual wear and use, might preserve it for an indefinite period, and no matter what injury might be done to the other less expensive part of the apparatus more liable to injury, or the walls which enclose the still, or to the building itself, if this construction were to prevail, there could be scarcely any such thing as the rebuilding a distillery.

The distillery in truth, in contemplation of the ordinance, as it is in common parlance, may be said to consist of the external structure, the building itself, and the internal structure, the distillery apparatus. These conjointly constitute the distillery, and any injury which requires the rebuilding of either would be a violation of the ordinance. The erection of a building for the purpose of a distillery would constitute no offence, for it does not assume the character of distillery until the internal apparatus is supplied. But when the internal structure exists in whole, or in part, the erection of a house over it, which is necessary for its more perfect operations, would be clearly within the just construction of the ordinance.

It is true the building itself, and the machinery for distilling may exist separately; and if the proprietor having sustained a partial injury in the machinery, has chosen to risk the success of his manufactory without rebuilding the house which enclosed it, or in other words, had chosen to work it in open air, if indeed such an operation were practicable, he might have done so, the corporation not having condemned repairs. But this being admitted to be so, will not affect the question of his liability if he rebuilt the house which encloses it; for such building is ordinarily, nay universally, a portion of such an establishment. Nor can this question be made depend upon the comparative cost of the building, and of the distillery apparatus. Although the house which encloses the machinery, may in cost be inconsiderable when compared with the worth of such machinery, the ordinance looks to the rebuilding of either the one or the other as punishable.

From these views it would follow, that if the plaintiff below had offered evidence, that the establishment of a distillery, like the one in question, was dangerous to the habitations of the citizens by increasing the hazard of fire, or that it was a nuisance, in addition to the evidence which the record contains, he might have subjected the defendant to the penalties of the ordinance.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.