Mr. Justice IIagner
delivered the opinion of the court.
This case is brought here by certiorari from the police court of the District of Columbia. The traverser was prosecuted upon an information instituted in that court for selling as a produce dealer in the Washington market, without obtaining license as required by clause 23 of section 21 of the ordinance of the legislature of the District of Columbia, passed August 23, 1871. It is admitted that the traverser did not obtain a license, and he defends his failure to do so upon the ground that the ordinance is not a valid one, and the question for the decision of this court is whether that defence is well taken.
The District of Columbia as a municipality is differently constituted from any other city in any State of the Union. In all other cities there are five sources of power, differing in *251 dignity^ superior to the municipal ordinances : first, the Constitution of the United States ; second, treaties ; third, laws of Congress made in pursuance of the Constitution ; fourth, the Constitutions of the States; and fifth, the laws of the States. As no State constitution and no State laws are in force here, the place of these two jurisdictions must be assumed by Congress, which necessarily possesses the power to make the grants to the municipality which are ordinarily made to city governments by the constitution and laws of a State.
1st. It is insisted that this court has decided that the power of Congress in this particular is not as full as that of the States, with reference to the cities within their borders, and the case of Roach vs. Van Riswick is referred to as supporting this distinction. It is evident, however, that that case gives no support to this doctrine. All that was decided there was that Congress had no right to bestow upon the legislative assembly of-the District any powers which were not necessary for it as a municipality; but the decision expressly, in more than one place, declares that whatever was granted by Congress to the legislative assembly of the District, m respect to matters properly pertaining to municipal government, was a valid grant. Indeed, it could not have been held otherwise, since the Supreme Court of the United States, in Welsh vs. Cook, 7th Otto, 542, had declared : “ It is not open to reasonable doubt that Congress had power to invest, and did invest, the District government with legislative authority, or that the act of the legislative assembly of June 26, 1873, was within that authority.”
The act then under consideration was a law repealing a prior ordinance which had exempted property used in manufactures from a full rate of taxation, and the Supreme Court, in this decision, clearly asserted the power of Congress to confer this and similar municipal powers upon the District of Columbia.
At the time of the passage of the organic act there were three governments in existence within the boundaries of the District: first, the municipality of Washington city; second, *252 that of the city of Georgetown ; and third, the government of the levy court which had jurisdiction iu that selvage of the territory of the District outside the cities.
By the organic act Congress abolished all these governments. It cannot be supposed that it intended to abridge the power possessed by them, but it is evident that the purpose of the law was rather to increase the power about to be confided to the new government of the District. In the former city governments there were certain explicit grants of power authorizing licenses in particular cases ; among others, to peddlers, to hucksters, pawnbrokers, &c. The organic law, instead of enumerating the powers of the municipality, contains general grants of powers. Hence we find no such enumeration of particular licenses as existed in the former city charters.
It cannot be denied that the District government has power to to issue some licenses. Whence does it derive it ? The only direct grant of power in the whole Bevised Statutes, to issue any license, is to be found in section 719, which authorizes the clerk of the Supreme Court to issue marriage licenses, and the only reference to licenses elsewhere in the Bevised Statutes is to be found in sections 401 el seq., authorizing the board of police to supervise and inspect licensed pawnbrokers, licensed vendors, and licensed hackmen and cartmen ; in section 435, which declares that it shall be unlawful to sell intoxicating liquors without a license approved by the board of police; and in sections 1182 and 1183, which forbid any persons licensed to sell intoxicating liquors to permit any soldier, &c., to drink the same upon his premises.
These sections recognize that there may be licenses issued. By whom are they to be issued ? By Congress ? If not, there is no other power that can issue them, except the authorities of the District. And what body is to decide as to the proper subject for the operation of these license laws? Of course, the same District authorities, acting within the ordinary bounds of municipal authority.
Under the charters of the old city governments, there ex *253 isted a power which the cities construed as authorizing licenses to hackney coaches, lottery dealers, and many other dealers, including hucksters and peddlers. Did Congress design to abridge this enumeration ? Evidently not. Among those classes whom the board of police are directed by the Revised Statutes to supervise and inspect are “ licensed vendors.” A vendor is one who sells or vends. There cannot well be a more comprehensive expression. Would there be any violence done to the force of the language, or to the legislative intention, by supposing it to comprehend one who vends produce as well as other things; in other words, a produce dealer? In our opinion this expression, “licensed vendor,” is sufficiently comprehensive to include produce dealers, especially when taken in connection with the other sections of the organic act.
Section 2 declares that the District is “ created a government by the name of the District of Columbia, by which name it is constituted a body corporate for municipal purposes, and may contract aud be contracted with, sue and be sued, plead and be impleaded, have a seal, and exercise all other powers of a municipal corporation, not inconsistent with the Constitution and laws of the United States and the provisions of this title.”
. Section 49 declares that “ the legislative power of the District shall extend to all rightful subjects of legislation within the District, consistent with the Constitution of the United States and the provisions of this title, subject to all the restrictions and limitations imposed upon States by the 10th section of the 1st article of the Constitution of the United States.”
Section 91 declares that “ all laws and ordinances of the cities of Washington and Georgetown respectively, and of the levy court of the District of Columbia, not inconsistent with this chapter, except as modified or repealed by Congress, or the legislative assembly of the District since the 1st day of June, 1871, or until so modified and repealed, remain in full force.”
And section 95 provides for the continuation of the char *254 ters of the cities, and of the powers of the levy court for certain purposes therein enumerated.
We have in these sections the most comprehensive grant to the District government of municipal powers. Supposing that the recognition implied in the power to supervise licensed vendors, is not to be considered as entitled to the force which we have given to it, we may then ask whether the power to require licenses is included within these comprehensive grants of general municipal powers ? Is the issue of a license a proper subject of municipal corporate government ? Undoubtedly it is. They are issued and required everywhere, in all cities, for particular avocations, and probably there is no municipality in the country, which does not exercise this power to some extent. Licenses have always been considered a proper subject of municipal cognizance. They are defined by Cooley, in his work on Municipal Corporations, sections 406 and 407, as “ taxes upon a privilege granted by a State or city to do something which it would be illegal to do without the grant, though the thing to be done may be lawful in itself, and only prohibited in order to compel the taking out of the license.” Power to issue a license is undoubtedly to be conferred by a sov- • ereignty and cannot exist in a municipality unless it is grauted. “ It is included in the general grant of legislative power, and reaches to every trade or occupation, to every object of industry, use or enjoyment, to every species of possession. If the right to impose a tax exists, it is a right which in its nature acknowledges no limits; it may be to any extent within the statute or corporation which imposes it, which the letter of such statute or corporation may prescribe.”
In the case of Ould vs. The City of Richmond, 23 Grattan, 468, the court decides, that the power to tax a lawyer’s license, is included in the general power of taxation given by the first clause of section 69 of the charter of the city of Richmond, which provides, that “ for the execution of its powers and duties, the city council may raise annually by taxes and assessments in said city, such sums of money as *255 they shall deem necessary to defray the expenses of the same, and in such manner as they shall deem expedient, in accordance with the laws of this State and of the United States.”
2d. It is said this license tax is illegal, because it increases the tax beyond the limit prescribed by the organic law, sections 130 and 131, and section 3 of the act of 1878, chapter 180, which limits the rate of taxation to $1.50 per hundred. But this limitation, by its express language, is confined to taxes upon real and personal property, and does not apply to taxes on employments or occupations, to be raised by licenses, which may undoubtedly be exacted under the police power confided to municipalities. See Cooley’s Constitutional Limitations, 596-7.
But in our opinion the intention of Congress, as to this point, must be considered as perfectly set at rest by its subsequent recognition of this legislative act in two instances. In the 19th Statutes of the United States, chapter 180, section 19, this very 23d section is amended in two clauses, and in chapter 117, section 14, clause 20 of this same section is repealed, leaving the residue of the section and act untouched. This we regard as Congressional recognition of the authority of the legislative assembly to pass this act.
3d. It is objected that this provision of the law cannot be sustained, because it is unequal and unjust, as making improper discriminations between tradespeople, especially as, by an amendatory act of the legislative assembly, butchers and produce dealers who sell in stores are exempted from this requirement.
In construing the law we are bound to examine its existing provisions, without reference to what its original form may have been. It is not for the court to decide whether the act is wise, or whether the members of the court would have voted for it. The discretion on the subject has been committed to the District government. “ When power is given to a municipality to pass laws necessary or proper to carry the power into effect, the degree of their necessity or propriety should not be minutely scrutinized.” Glenn vs. *256 Baltimore City, 5 G. & J., 424. “A license cannot be deemed unequal because reaching one occupation only, if it is to reach all who follow that.” Cooley on Taxation, 128.
But it would not be difficult to assign very good reasons why produce dealers selling in the market should be required to pay a license for the exercise of the valuable privilege they enjoy, while licenses may not be demanded from dealers who rent expensive stores and whose profits must, therefore, be necessarily lessened.
It is sought to enhance the force of the argument as to the unequal discrimination by comparing the case of a produce dealer selling in the market, who is compelled to pay a license, with that of one immediately across the street from the market, selling in a store, and exempt from license. But if the ordinance, besides taxing produce dealers in the market, had said that the same license should be required for all selling within a dozen squares on each side the building, there would still be one place immediate^ outside of this line where the exemption would begin.
4th. It is true that a tax levied by a municipality must not be unreasonable. But by unreasonableness the courts do not simply mean that the tax must not be larger than the judges might think was wise. It would be presumed to be reasonable if laid by an authority endowed with discretion on the subject, and no court would declare a tax unreasonable because it was rated at $20 dollars a year, instead of $15 or $10, when the subject has been confided to the discretion of the .lawmaker. True, a tax might be held unreasonable by the court • because of its oppresiveness ; as, for example, where a business of a thousand dollars a year was taxed nine hundred dollars.
In such a case the unreasonableness would be so apparent that the court would interfere, upon the same principle that, while it is conceded that inadequacy of price constitutes no sufficient ground for setting aside a trustee’s sale, still, where the- inadequacy is so gross as to shock the moral sense and suggest fraud, the sale will be set aside. But this is not inconsistent with the general principle that *257 the courts will not for mere inadequacy set aside a sale otherwise fairly made.
The application of the idea of unreasonableness lies in another direction. “A law will be held unreasonable if it does not tend in some degree to the accomplishment of the object for which the corporation was created and its powers conferred, and is not in harmony with the general principles of the common law.” Cooley Const. Dim., 202.
Municipalities in general, where there is an enumeration of powers, are entrusted with authority to pass ordinances to prevent fires. No court would hold that the ordinances of the old time were unreasonable that required a householder to keep three fire buckets instead of two. But if with the honest view of preventing fires, the corporation were to pass a law requiring every householder at the sound of a curfew to extinguish his lights and fires at nine o’clock, although this might constitute a more perfect protection against fires than any other plan that could be devised, the courts would undoubtedly hold that to be an unreasonable exercise of power. It was upon this principle that this court decided in the case of the District of Columbia vs. Saville, 1st Mac Arthur, 581, that a law preventing the sale of reserved seats at a theatre after the opening of the performance, was an unreasonable and vexatious interference with private rights.
The power to tax necessarily implies, it is said, the power to destroy. And upon this ground the courts upheld the embargo acts, which, under the claim of regulating commerce, it was insisted, had, in fact, destroyed it. Although it may well be that this principle of construction would not be applied to such an extent to the ordinances of cities, it, nevertheless, is correct to a degree with reference to them. In the case of France vs. The City of Washington, 6 Cranch’s Circuit Court Deports, 667, our predecessors decided that “ the city of Washington has power to provide for licensing, taxing and regulating vendors of lottery tickets, although the tax may be so high as to amount to a prohibition, and although the applicant may *258 be required by the ordinance to deposit the cost of a license in a bank before he can obtain his license.”
In the Railroad cases, 2 Otto, 612, the Supreme Court says : “ Perfect equality and perfect uniformity of taxation as regards individuals and corporations, or the different classes of property subject to taxation is a dream unrealized. It may be admitted that the system that most nearly attains this is best ; but the most complete system that can be devised must be imperfect.”
5th. The objection that thé license is in restraint of trade cannot avail where the power to impose it is granted. The cases cited in which this principle has been invoked were decided upon their pecular facts and in our opinion cannot affect the case before us.
6th. It is further insisted that the law is illegal because, the fines imposed may be enforced by imprisonment. But even if this portion of the punishment were illegal in itself, that fact would not invalidate such parts of the ordinance as are legal. The District ordinance says nothing of imprisonment as a mode of enforcing payment of fine. Congress, by the act of June, 1870, committed to the police-court original and exclusive jurisdiction of “ all offences against the laws and ordinances of the District.” Sec. 1049 Rev. Stats. And by sectibn 1054, declared that “ the court may enforce any of its judgments or sentences by fine or imprisonment or by both.” The ordinance simply declares that the produce dealer must take out a license, and that he shall pay a fine if he undertakes to sell without having obtained one. The punishment for the violation of this ordinance was not established by the District of Columbia, but by Congress, which undoubtedly had the power to imprison the offender, if it saw fit to do so. But it by no means follows that, in any future case, any more than in this, a violation of the ordinance-will be enforced by imprisonment, instead of the alternative penalty, the imposition of a fine. It may, however, have been considered very well that the twofold power should exist, as it might be impossible otherwise to enforce payment from a class who contribute nothing otherwise toward *259 the support of the city government, while making great profits from their tax-paying fellow-citizens.
Ve have carefully examined these questions in deference to the zealous efforts of the counsel, although we might well have considered them as settled beyond controversy by the courts of the District. In a number of cases within the past year, the question has been presented to the Criminal Court, which has as often decided in favor of the validity of the act, and the decision of the General Term in the case of The District of Columbia vs. Hamason, 2 Mac Arthur, 158, sustaining a prosecution under the third clause of this same section, assumes its validity, although the point was not made in the argument. But the information in that case could not have been sustained unless the General Term had been of the opinion that the act was a lawful exercise of power.
The changes in the oi’ganization of the District govern-, ment since the passage of the organic act, have not affected the question. Chapter 387 of the laws of 1874 abolished the legislative assembly of the District, and lodged the government in the hands of three commissioners, in whom were vested all the powers previously exercised by the governor and assembly. By chapter 180 of the laws of Congress of 1878, the present organization of the District was established, and it is declared therein that the District shall remain a municipal corporation, as provided by section 2 of the organic act, and the commissioners are authorized by that law “ to apply the taxes or other revenues” for the purposes of the municipal government, which is ¿ recognition by Congress that there may be revenues not derived from taxation upon property. But the question would seem to be clear, if the ordinance were to be considered only under the proper construction of the police power in virtue of which, says Cooley (Constitutional Limitations, 596), markets are regulated and particular articles allowed to be sold in particular places only, or after license, weights and measures are established and dealers compelled to conform to the standards under penalty ; and persons following par *260 ticular occupations of the nature requiring special public supervision, such as auctioneers, draymen, hackmeu, hucksters, victuallers and the like, are compelled to take out license, and to conform to such rules and regulations as are deemed important for the public convenience and protection.”
Upon the whole case, we have no difficulty in confirming the decision of the court below.