Mr. Justice James
delivered the opinion of the court.
This suit is brought for breaches of a bond given to the District of Columbia by Waggaman as principal, and Pilling and Clarke as sureties. A recital states that Waggaman had obtained from the District a license to engage in the business of real estate agent, pursuant to the act of the legislative assembly, approved August 23, 1871, and acts amendatory thereof; and the conditions are: “That if the above bounden Thomas E. Waggaman shall well and faithfully in all things comply with said act and acts amendatory thereof, and honestly and duly perform all duties required by law of him as real estate agent, and shall account and pay to the said District or the proper officer thereof, or to any other person or persons, all sums which may be due and owing by him by reason of said license and the business authorized thereby, then this obligation to be void; otherwise to be and remain in full force and virtue.”
The declaration avers that the defendant, Waggaman, being desirous of engaging in the business of real estate agent, and having obtained a license for that purpose on December 6, 1882, executed the above bond, with Pilling and Clarke his sureties; that Waggaman engaged in said business but did not comply with the acts of the legislative assembly referred to therein and did notjperform the duties required by law of him in this: that he did not, on or before January 10,1883, or since said time, under oath or affirmation, make a due return to the assessor of the District of Columbia of the receipts and commissions received by him as real estate agent for the six months ending January 10,1883, or any part of said time, whereby the plaintiff was *330 unable to assess tbe license tax on account of said receipts and commissions; and the same is unpaid, by reason of which breaches plaintiff has sustained damages in $1,000. To this declaration- the defendant, Waggaman, filed three pleas: 1. That the alleged deed is not his deed. 2. Denying breaches. 3. That the act bf the legislative assembly and the act amendatory thereof!, so far as they imposed a license upon real estate agents and required them to execute such a bond as sued on, have been repealed by section 19 of the act of Congress of July Í2, 1876.
The defendants, Pilling and Clarke, pleaded that the alleged deed is not their deed.
In order to show the nature of the defence, it is necessary to state some of the provisions of the acts of the legislative assembly referred to.
The act of August 23, 1871, is entitled “An act imposing a license on trades, business and professions practiced or carried on in the District of Columbia.” The 1st section provides that no person shall be engaged in any trade, business or profession mentioned in the act until he shall have obtained a license therefor, as afterwards provided; and the 2d section provides the steps to be taken for obtaining the license. The previous giving of a bond is-not one of these. Then section 15 provides that “Every real estate agent shall give bond to the secretary of the District of Columbia in the sum of $5,000, with two good and sufficient sureties, to be approved by the Governor, for the honest and due performance of all duties required by law; ” and further provides that “Every real estate agent failing to comply with the provisions of this section, shall, on conviction, fQrfeit his license and be fined not less than $100.” It appears, then, from sections 2 and 15, that the license is not to be withheld until the bond shall have been given, but is to be issued upon the performance of other conditions, and is only liable to revocation if the bond is not given. The reason for referring to this point will appear when we come to consider the grounds of the defence in this case.
Section 21, clause 38, as amended by the act of June 20, *331 1872, ch. 49, provides that “Real estate agents shall pay $25 annually, and in addition pay semi-annually a tax of one per cent, on their commissions.” For the purpose of ascertaining the amount of the commissions on which this tax is to he paid, section 17, as amended by the act of June 20, 1872, ch. 49, provides “that whenever in this act a tax is imposed semi-annually on sales or receipts, returns for the same shall be made to the register, under oath or affirmation, on o.r before the 10th days of January and July of each year, and the same shall be due and payable to the collector on or before the 30th of said month.” This section further provides that “if, in the opinion of the register, the returns required by law are underestimated, he shall have power to examine, either in person or by deputy, the books and accounts of the person making such returns; and if he shall find that the returns made are less in atnount than that shown by said books and accounts, he shall make an assessment for a correct sum, to which he shall add a penalty of twenty-five per cent, on amount of tax due.”
The case was tried in the circuit court upon the following stipulation, by which some of the facts relied on by the’ defence are presented:
“1. A trial by jury is hereby waived.
“2. The bond in suit, and produced by the plaintiff, was signed and sealed by the defendants.
“ 3. That during the last half of the year 1882, the deiendant Waggaman was a real estate agent in the District of Columbia, and obtained his license to do business as such within a few days after the date of said bond; but before said defendant could obtain such license, he was required to execute said bond in the' form in which it is, and have the same approved by the Commissioners of the District; and unless said bond had been executed and approved, said defendant could not have obtained his said license to carry on in said District the business of a real estate agent.
“4. That said Waggaman’s gross receipts from commissions in his said business, during said six months, was the sum of $11,060.44, of which he made no return.
*332 “5. The tax upon real estate agents is imposed under and by virtue of clause 38, section 21, of the act of the late legislative assembly, of August 23, 1871, ch. 69, as amended by the subsequent act of June 20, 1872, ch. 49. That under section 3 of the latter act, the assessor, as successor to the register, arranged the laws relating to licenses in the form of a circular, and distributed printed copies thereof. That three of the clauses of said section 21 having been either repealed or adjudged illegal, the assessor in his said circular, wholly omitted said three 'clauses, but continued a consecutive numbering of the others which were retained, whereby in said printed circular, said clause 38 relative to real estate agents'was numbered 35. The real estate agents, as a class, having petitioned Congress for the repeal of the law imposing a license tax upon them, the committee of Congress having the matter in charge had before it, as evidence of said act of the legislative assembly of August 23, 1871, the said printed circular, and said committee having reported favorably upon said petition, Congress passed said act of July 12, 1876, 19 Stats., 83, repealing clause 35, section 21 of said act of August 23, 1871; after which time until some time in 1882, it was supposed that the law imposing a license tax upon real estate agents was repealed, and none was required of them. In the latter part of 1882, it was discovered that clause 35 of said act referred to photographers, and since then they have been held by the District as not required to pay a license tax, and real estate agents have been so required.
“6. That all acts of the legislative assembly, as published, and all acts of Congress having, in the opinion of either party, any bearing upon the subject, may be read at the hearing.”
The circuit court entered judgment in favor of the plaintiff for $110.60 and costs; whereupon the defendants appealed.
The matters ’stated in the fifth clause of the stipulation were intended to support the third plea of the defendant Waggaman, viz., that the act of the legislative assembly and *333 the act amendatory thereof, so far as they imposed a license upon real estate agents and required them to execute such á bond as sued on, have been repealed by the act of Congress of July 12, 1816. We may dispose of this plea at once by saying that, although as a matter of history, the facts presented may show that it was the intention of the persons who had charge oí that business to effect a repeal of these provisions, they show, as a matter of law, that they were not repealed.
It was not upon this proposition, however, that the defendants seriously relied at the argument. Their principal grounds were that, notwithstanding the broad terms of the organic act which established the District government and the legislative assembly, the latter could not be clothed with legislative powers, and therefore had only municipal powers; that, according to the rule by which such powers are measured, its acts must be reasonable, and that a tax on vocations was unreasonable, and in this case was connected with and dependent upon another provision authorizing an invasion of rights by a scrutiny of private and lawful transactions which was beyond the powers of a municipality. Next, as to the particular bond in question, it was insisted that, because it contained conditions not authorized by the act and was extorted colore officii, it is void.
We have to consider first, then,' the validity of the act of the legislative assembly which imposed this tax on commissions earned by real estate agents, and required a semiannual return of those commissions and a bond to secure the performance of these and other acts prescribed by law.
In Roach vs. Van Riswick, 7 Wash. L. Rep., 496, this court held that the very broad terms in which the organic act of 1810 granted legislative powers to the legislative assembly had the effect to clothe that body with only such powers as might be given to a municipal corporation, and that it was not competent for Congress to delegate the larger powers of general legislation which it had itself received from the Constitution. We are still satisfied with that decision; but we hold, on the other hand, that the pro *334 vision referred to had the effect to bestow every power of municipal legislation which could be given to a municipal corporation, and especially the power of taxation and the implied or included power to provide measures by which taxes may be enforced and collected. Section 49 of the organic act provided that “the legislative power of the District shall extend to all rightful subjects of legislation within the District, consistent with the Constitution of the United States and the provisions of this title;” and section 57 provided that “the legislative assembly shall not have power to tax the property of the United States, nor to tax the lands or other property of non-residents higher than the lands or other property of residents.”
These restrictions of the power to impose taxes amount, according to the principle of construction applied by the Supreme Court in the Legal Tender Cases, 12 Wall., 534, to a declaration that the same act had already conferred the general power’. Mr. Justice Strong, speaking of the restriction of the power to suspend the writ of habeas corpus, says: “It shows irresistibly that somewhere in the Constitution power to suspend the writ was granted.” In the case before us the restriction has a direct application. It refers to the general grant of legislative power contained in section 49; and this construction, being part of the same act, is binding on the courts. It instructs us that the general grant of power to legislate on all rightful subjects, etc., is by inclusion, an express grant of power to legislate on the subject of taxation, except as limited in section 57; and this express power to legislate on this subject includes, of course, the power to legislate on the means of ascertaining the extent of the object taxed; in other words, to require returns and to test their accuracy by inspections. We repeat that these are not implied powers, powers existing only by implication; but powers included in the descriptive terms of the express grant, and therefore to be treated as expressly granted powers. The importance of this distinction will presently appear. Kecurring then to the doctrine that the general grant had the effect to bestow *335 only so much power as may be given to a municipality, we have to add that the power to tax vocations, and to provide complete means for ascertaining the extent of the object taxed and for securing collection, may be so conferred. This doctrine has been too well settled by authorities to need further vindication.
But it was insisted that, in order to be valid, the exercise of this power must be “reasonable,” and that the provisions, requiring returns of commissions earned and imposing a tax thereon, are not reasonable. This test of the validity of a municipal act or by-law cannot be applied when the power to legislate on the subject has been expressly conferred. In that case we have only to construe the grant, and when the grant imports that the full power is given and that the measure and manner of its exercise are intrusted to the grantee, we have no more to do with the reasonableness of its exercise than with the reasonableness of an act of Congress. The judicial control here invoked belonged to a different class of cases. In England the subjects upon which by-laws might be made were not usually specified in the king’s charter, and it'became an established doctrine of the courts that every corporation had implied or incidental power to pass by-laws; but this power was accompanied with the limitation that every by-law must be reasonable. And in this country the courts, in affirming the general incidental power of municipal corporations to make ordinances, have always declared that ordinances passed in virtue of the implied power must be reasonable. Dill. Mun. Corp., sec. 253, and cases cited.
In other words, the courts have held that where the existence of a power depended on judicial implication, they were not at liberty to imply power to do what was unreasonable. Plainly this rule does not apply in construing the extent of an express grant of power, and we are dealing only with an express grant. When we find as a matter of construction, that Congress has granted this power, we must refrain from considering whether that grant or the authorized exercise of it was reasonable. We can only consider *336 whether it was exceeded, and we do not find that it was exceeded in anything done in the case before us. It was urged in the argument that the provision for semi-annual returns of earnings was so connected with the provision for an official search into the real estate agent’s private accounts as to be tainted by the latter provision, which could not be held to have been authorized by Congress. But if we assume that it was not authorized by any fair construction of the granted power, we cannot admit the alleged effect of that provision. It was not invoked in this case, and the making of an honest return cannot be said to be compelled by it, if made. The power to demand the return was clearly incident to the power to tax the commissions received, and could be exercised equally whether the same law provided for an official search and inspection or not. Moreover, the statute only provided for such an inspection in case of a return actually made but supposed to be underestimated, and does not apply at all where no return is made, as in the cáse of the defendant. The argument of dependent relation between the two provisions fails therefore, as matter of fact as well as of law.
The next objection to a recovery on this bond was, that it contains a condition not authorized by the statute; that this unauthorized condition was extorted from the defendant Waggaman, colore officii, and that a bond which is not required by law is not obligatory .unless it is found to be a voluntary control on the part of both parties.
We have no doubt that so much of the condition of the bond as required the defendant to account and pay to any other person than the District “all sums which may be due and owing by him by reason of said license and the business authorized thereby,” was unauthorized by the statute. The requirement that bond should be given “for the honest and due performance of all duties required by law ” refers only to the duties named in the statute, such as the making of semi-annual returns of his commissions and the payment of tax thereon, and does not refer, as the condition of the bond actually taken does, to the payment of all sums due, *337 for example, to his principals. We are of opinion also that this unauthorized part of the condition is shown by the facts stated in the stipulation to have been extorted from the defendant colore officii. It is there agreed that, before the defendant could obtain his license he was required to execute the bond “in the form in which it is,” and that he would not have been granted a license otherwise. In United States vs. Tingey, 5 Pet., 115, a bond w contract of the alleged obligor, because it was not a voluntary contract. On this principle it is clear that so much at least of the conditions in this case as was not required by law is not obligatory. But does it follow that the whole of the bond must be treated in the same way? We think not. That part of the conditions which secured the performance of the defendant’s duties toward the District was legal and is severable from the illegal portion. It is capable of being treated as a complete contract by itself. Now the doctrine relating to contracts extorted colore officii, applies only to contracts which the law does not require. As such a bond stands, not upon the statute, but upon the voluntary consent of the party to assume obligations outside of the law, it is important to ascertain whether it was obtained colore officiÁ; but where the law requires a certain condition to be inserted, the pressure of the officer demanding it, is not pressure of official power but the actual possession of it; and the party, who has only complied with a legal obligation, will not be heard to say that he did not act voluntarily but under lawful compulsion. The lawful condition of this bond, then, was given voluntarily, and is severable. In such a case it can be enforced. In United States vs. Hodson, 10 Wall., 408, the Supreme Court said: “It is a principle of law that whefre a bond contains conditions some of which are legal and others illegal, and they are severable and separable, the latter may be disregarded and the former enforced.” In accordance with this principle we hold that the bond in this case contains a perfect obligation, to the extent of all the duties of the defendant toward the District.
*338 But it may be objected that the facts in this case do not permit the application of the principle which we have just stated; that the act of 1871 did not require any bond to be given before the license should be issued, while the stipulation shows that this bond was exacted as a condition to the issuing of the license; that, therefore, in giving any bond at all, the defendant did an act which could not, at that point of time, be exacted of him, and that consequently, such act cannot be regarded as the mere performance of a legal duty, which must be treated as done voluntarily. We think this objection is immaterial. The provisions of the 1st and 17th sections show that the defendant could not lawfully pursue his vocation without the performance of two preliminary conditions, namely: the obtaining of a license and the giving of a bond. Although the statute indicates a particular order in which these acts are to be done, that order is .not of the essence of the matter, and an inversion of it could not in any way affect the rights of the applicant for license injuriously. The very same bond would be required in either case. If this bond is severable, and the lawful condition can be treated as the kind of bond which the law required to be given ultimately, as one of the two duties to be performed before the defendant could lawfully proceed, he must notwithstanding the order in which those acts were required, still be regarded as having done merely what the law required, and therefore as having acted voluntarily and not by constraint imposed colore officii. We find the bond sued on .to be the actual bond of the defendant to the extent of the lawful condition.
The judgment is affirmed.