Leopoldine M. TYNES, Appellant,

v.

Pandora P. GOGOS, Appellee.

No. 2131.

Municipal Court of Appeals for the District of Columbia.

Argued March 3, 1958.

Decided Aug. 22, 1958.

Rehearing Denied Sept. 5, 1958.

Oliver Ellis Stone, Washington, D. C., for appellant.

Donald J. Caulfield, Washington, D. C., with whom Bond L. Holford, Washington, D. C., was on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

The right to maintain a civil action for damages predicated on the so-called "anti-discrimination laws" effective in the District is in issue on this appeal. The matter is before us from an order of the trial judge granting a motion to dismiss appellant's complaint for failure to state a claim upon which relief can be granted.

The complaint filed in this case alleged that appellant, a white woman, accompanied by her husband, a member of the Negro race, entered a restaurant and dance hall owned and operated by appellee in this city. They were admitted into the restaurant, ordered, and were served refreshment. Sometime in the course of the evening appellant and her husband went to the area of the restaurant reserved for dancing and began to dance when, ac-

cording to the complaint, an employee acting on appellee's instructions informed them that "mixed dancing" was not permitted and ordered them to stop. In addition to these allegations the complaint states that when appellant attempted to protest the order in a peaceful manner, insulting and abusive remarks were made to her in the presence of other patrons. For humiliation, embarrassment, anguish, and anxiety, appellant sought compensatory and punitive damages.

Although the complaint as originally drawn included an allegation of assault, this was deleted by amendment in the trial court prior to the hearing on appellee's motion, and counsel for appellant in oral argument before this court has assured us that assault is not alleged in the action.

Appellant's claim is in main based on the violation of two Acts of the Legislative Assembly passed in 1872[1] and 1873[2] and an Act of the Corporation of the City of Washington, aproved June 10, 1869, as enlarged and amended in 1870.[3] The pertinent portions of these Acts are set forth in the margin.[4]

1. Act of June 20, 1872, D.C.Laws 1871–72, pt. IV, c. LI, §§ 1–3, Comp.St.1894, c. 16, § 148 et seq.

2. Act of June 26, 1873, D.C.Laws 1873, pt. II, c. XLVI, §§ 1–5, Comp.St.1894, c. 16, § 151 et seq.

3. Act of June 10, 1869, ch. 36, p. 22, Corp.Laws of Wash., 66th Council, §§ 1, 2, as enlarged and amended by the Act of March 7, 1870, ch. 42, p. 22, Corp. Laws of Wash., 67th Council, §§ 1–5.

4. Section 3 of the 1872 Act provides: "Any restaurant keeper or proprietor, any hotel keeper or proprietor, proprietors or keepers of ice-cream saloons or places where soda-water is kept for sale, or keepers of barber shops and bathing houses, refusing to sell or wait upon any respectable well-behaved person, without regard to race, color, or previous condition of servitude, * * * shall be deemed guilty of a misdemeanor, and upon conviction in a court having jurisdiction, shall be fined one hundred dollars, and shall forfeit his or her license as keeper or owner of a restaurant, hotel, ice-cream saloon, or soda fountain, as the case may be, and it shall not be lawful for the Assessor [Register] or any officer of the District of Columbia to issue a license to any person or persons, or to their agent or agents, who shall have forfeited their license under the provisions of this act, until a period of one year shall have elapsed after such forfeiture."
Sections 1 and 2 of the 1873 Act provide for the posting of prices by restaurants and drinking places. Section 3 provides that the sale of food and drink shall be at the usual or common prices and service to any respectable and well-behaved person shall be rendered in the same room or rooms where any other such person would be served.
Section 4 of this Act reads: "If the proprietor or proprietors, keeper or keepers, of any place or establishment * * shall refuse or neglect, in person or by his, her, or their employe or agent, directly or indirectly, *to accommodate any well-behaved and respectable person* * * * or shall at any time or in any way or manner, or under any circumstances, or for any reason, cause, or pretext, *fail, decline, object, or refuse to treat any person or persons aforesaid as any other well-behaved and respectable person or persons are treated* at said restaurant, eating-house, bar-room, sample-room, ice-cream saloon, or soda-fountain room, he, she, or they, on conviction of a disregard or violation of any provision, regulation, or requirement of this act or any part of this act contained, be fined one hundred dollars, and forfeit his, her, or their license; and it shall not be lawful for any officer of the District to issue a license to any person or persons, or their agent or agents, whose license may be forfeited under the provisions of this act for one year after such forfeiture: Provided, That the provisions of this act shall be enforced by information in the Police Court of the District of Columbia, filed on behalf thereof by its proper attorney or attorneys, subject to appeal to the Criminal Court of the District of Columbia in the same manner as is now or may be hereafter provided for the enforcement of the District fines and penalties under ordinances and law." (Emphasis supplied.)

The validity of these Acts is not in dispute. In District of Columbia v. John R. Thompson Co.,[5] the Supreme Court upheld the validity of the 1873 Act and left open on remand to the United States Court of Appeals for the District of Columbia the status of the 1872 Act. That court ruled "with respect to restaurants, the 1873 Act repealed that of 1872 * * *." [6] Two years later this court affirmed a conviction under the 1869 Act as amended. Central Amusement Company v. District of Columbia, D.C.Mun.App. 1956, 121 A.2d 865.

■ The applicability, however, of these Acts to the facts as pleaded in this case raises some doubts. The Act of 1872 does little more than require that equal service be accorded patrons without regard to race or color, a matter not in issue here. Its unrepealed provisions apply only to hotels, ice-cream saloons, soda fountains, barber shops, and bathing houses, all of which appear to be totally dissimilar from appellee's establishment as described in the complaint. The Act of 1873 speaks in terms of equal treatment and of *accommodating any*

*well-behaved and respectable person.* The 1870 Act, which broadened the scope of its 1869 predecessor, made it unlawful to refuse to admit or *entertain* any quiet or orderly person because of race or color. While the latter two Acts would appear to have greater relevancy, neither party on this appeal has specifically argued the construction or applicability of the terms employed in the Acts in relation to the activity prohibited by appellee. Appellant's contention on this is only that the actions of appellee were such as to constitute discrimination on the basis of race or color. We need not resolve this conflict, for assuming without so deciding that the facts of this case are within these Acts, we hold as to the paramount issue raised on this appeal (1) that the Acts involved here are municipal ordinances or police regulations, penal in character, and (2) that they do not give rise to a civil action for damages.

■ Construing the Organic Act of February 21, 1871, 16 Stat. 419, which created the government of the District of Columbia, the Supreme Court, in the Thompson case characterized the District's early gov-

---

The Act of 1869 made it a punishable offense for any person holding a license for the purpose of giving a lecture, concert, exhibition, circus performance, theatrical entertainment, or for conducting a place of public amusement to make any distinction on account of race or color in regard to the admission of persons. A fine of not less than ten dollars nor more than twenty dollars was established for the violation of this provision.

This Act was enlarged by the Act of 1870. Section 1 reads: "That from and after the passage of this act it shall not be lawful for the keeper, proprietor, or proprietors of any licensed hotel, tavern, restaurant, ordinary, sample-room, tippling-house, saloon, or eating-house, to *refuse to receive, admit, entertain, and supply* any quiet and orderly person or persons, or to exclude any person or persons on account of race or color." (Emphasis supplied.)

In addition, § 3 of the Act of 1870 amended the Act of 1869 by increasing the fine to a sum of not less than fifty dollars for each violation.

Section 4 provides: "That after the final conviction of any party for the violation of any of the provisions of this act, or of that of June 10, 1869, * * * *and the recovery of the fine, a sum equal in amount to one-half of such fine shall be paid,* * * * *to the party who may have been the informer in* any such case." (Emphasis supplied.)

5. D.C.Mun.App.1951, 81 A.2d 249, reversed in part, 1953, 92 U.S.App.D.C. 34, 203 F.2d 579, reversed, 1953, 346 U.S. 100, 73 S.Ct. 1007, 97 L.Ed. 1480. For discussions of this case, see Franchino, The Constitutionality of Home Rule and National Representation for the District of Columbia, Part I, 46 Geo.L.J. 207, 243–53 (1957–58); Indritz, Post Civil War Ordinances Prohibiting Racial Discrimination in the District of Columbia, 42 Geo.L.J. 179, 181 et seq. (1954). See also Notes, 42 Geo.L.J. 132 (1953); 67 Harv.L.Rev. 107 (1953); 28 N.Y.U.L. Rev. 1316 (1953).

6. 1954, 93 U.S.App.D.C. 373, 214 F.2d 210, 211.

ernment as a "territorial government." 346 U.S. at page 105, 73 S.Ct. at page 1010.[7] The grant of legislative power to the District's Legislative Assembly was said by the Court to be substantially identical with the grant of legislative power to the territories. Subject to the right of Congress to revise, alter, and revoke, the lawmaking authority delegated to the Legislative Assembly extended to all rightful subjects of legislation and "was as broad as the police power of a state" so as to include laws prohibiting discrimination on the basis of race. 346 U.S. at page 110, 73 S.Ct. at page 1013. But if the Legislative Assembly, during its brief existence,[8] was empowered to enact matters of general legislation, it also possessed the power to prescribe local regulations relating purely to municipal affairs.[9] Thus the Assembly was something of a legislative anomaly possessing dichotomous powers.

Having categorized the authority vested in the Legislative Assembly, the Supreme Court in the Thompson case then classified the Acts of 1872 and 1873:

"It is our view that these anti-discrimination laws governing restaurants in the District are 'police regulations' and acts 'relating to municipal affairs' * * *."[10]

And again at 346 U.S. 113, 73 S.Ct. at page 1014, the Court said:

" * * * Regulation of public eating and drinking establishments in the District has been delegated by Congress to the municipal government from the very beginning. [Citing authorities.] In terms of the history of the District of Columbia there is indeed no subject of legislation more firmly identified with local affairs than the regulation of restaurants."

Similarly, this court in Central Amusement Company v. District of Columbia, D.C.Mun. App., 121 A.2d 865, at page 866, held the Act of 1869 as enacted and amended by the Board of Common Council to be a "regulatory measure in the nature of a police regulation."

Each of the Acts in question was designed to end discriminatory practices in the District through the regulation of restaurants and each therefore prescribed within its framework a penal sanction. Section 3 of the 1872 Act established a fine of $100 and forfeiture of the offender's license for its violation. The Act of 1873 fixed a similar penalty (§ 4) and provided in detail for enforcement by information in the Police Court subject to appeal to the Criminal Court. The 1869 Act as amended and enlarged exacted a fine of $50, one-half of which was to be paid the informer *upon recovery*. Clearly these Acts are penal in nature; none suggests or envisions a civil remedy.

7. See also Eckloff v. District of Columbia, 1890, 135 U.S. 240, 241, 10 S.Ct. 752, 34 L.Ed. 120. A similar comparison was made in the earlier case of Grant v. Cooke, 1871, 7 D.C. 165.

8. The Legislative Assembly was abolished by the Temporary Organic Act of June 20, 1874, 18 Stat. 116, which provided for a temporary government of three Commissioners appointed by the President. By the Organic Act of June 11, 1878, 20 Stat. 102, this became the permanent form of government in the District and legislative power was withdrawn from the municipal government.

9. Numerous earlier decisions had upheld directly or by implication the Assembly's authority to enact local or municipal laws. See Stoutenburgh v. Hennick, 1889, 129 U.S. 141, 9 S.Ct. 256, 32 L. Ed. 637; Johnson v. District of Columbia, 1908, 30 App.D.C. 520; Smith v. Olcott, 1901, 19 App.D.C. 61; District of Columbia v. Waggaman, 1885, 4 Mackey 328, 15 D.C. 328; Cooper v. District of Columbia, 1880, 1 MacArthur & Mackey 250, 11 D.C. 250; Roach v. Van Riswick, 1879, 1 MacArthur & Mackey 171, 11 D.C. 171.

10. 346 U.S. at page 112, 73 S.Ct. at page 1014.

Numerous authorities are cited by appellant to support the proposition that legislation while penal in form may be both penal and remedial in effect.[11] All of these cases are readily distinguishable in that they involve specific state Civil Rights Acts or congressional legislation. The Acts in issue here are not *statutes* but *municipal ordinances.*

■ The question then presented is whether a civil action for damages may be predicated on an ordinance or regulation. In 6 McQuillan, The Law of Municipal Corporations, § 22.01 (3d ed. 1949), it is stated:

> "The well-established general rule is that a municipal corporation cannot create by ordinance a right of action between third persons or enlarge the common law or statutory duty or liability of citizens among themselves. * * * As applied to causes of action in tort the rule is also applicable not only theoretically but in full and practical effect; an ordinance cannot directly provide that one person owes a civil duty to another, the breach of which to the damage of the other gives him a cause of action. * * *"

Although we have found no case factually in point[12] and have been referred to none, this principle has found wide acceptance in cases of diverse factual circumstances. See Bain v. Ft. Smith Light & Traction Co., 1915, 116 Ark. 125, 172 S.W. 843, L.R. A.1915D, 1021; City of Goshen v. Crary,

1877, 58 Ind. 268; City of Joplin v. Wheeler, 1913, 173 Mo.App. 590, 158 S.W. 924; Becker v. Schutte, 1900, 85 Mo.App. 57; Vandyke v. City of Cincinnati, 1857, 1 Disn. 532, 12 Ohio Dec. 778; Philadelphia & Reading R. Co. v. Ervin, 1879, 89 Pa. 71, 33 Am.Rep. 726; Kessler v. Mandel, 1945, 156 Pa.Super. 505, 40 A.2d 926; Hceney v. Sprague, 1877, 11 R.I. 456, 23 Am.Rep. 502; Stark v. First Nat. Stores, 1952, 117 Vt. 231, 88 A.2d 831; Shea v. Pilette, 1937, 108 Vt. 446, 189 A. 154, 109 A.L.R. 933. We think it applicable here. The Acts on which appellant relies are, in the words of Justice Douglas speaking for the Court in Thompson, *"regulatory* laws prescribing in terms of civil rights the duties of restaurant owners to members of the public." 346 U.S. at page 116, 73 S.Ct. at page 1016. The duties set forth in these Acts embrace not only equal service and accommodations but the posting of prices. For the breach of these duties criminal penalties are exclusively provided, and the rights conferred on the public through these regulatory measures are enforceable therefore solely by the municipality through its criminal processes. The annexation of civil liability would not only contravene the principle we adopt here but would supply an intent and a remedy not found in the Acts.

■ Apart from these Acts appellant contends the rights asserted here existed at common law. We know of no settled authority in the District which supports this view[13] and are of the belief that the

11. Fitzgerald v. Pan American World Airways, 2 Cir., 1956, 229 F.2d 499, involving the Civil Aeronautics Act of 1938, 49 U.S.C.A. § 401 et seq.; Amos v. Prom, Inc., D.C.N.D.Iowa 1954, 117 F.Supp. 615; Powell v. Utz, D.C.E.D. Wash.1949, 87 F.Supp. 811; Bolden v. Grand Rapids Operating Corporation, 1927, 239 Mich. 318, 214 N.W. 241, 53 A.L.R. 183; Anderson v. Pantages Theater Co., 1921, 114 Wash. 24, 194 P. 813. Contra: Agnew v. City of Compton, 9 Cir., 239 F.2d 226, certiorari denied 1957, 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910; Mezullo v. Maletz, 1954, 331 Mass. 233, 118 N.E.2d 356.

12. But see Nance v. Mayflower Tavern, 1944, 106 Utah 517, 150 P.2d 773, where the court had before it a similar ordinance. However, in holding the ordinance void, the court did not reach the question raised here.

13. Appellant relies on *dictum* in Judge Cayton's opinion in Thompson, where he expressed his personal view that the Assembly, in passing these Acts, was not creating new rights, but by local regulation was assuring the observance of pre-existing rights of local citizens. 81 A. 2d at page 251.

**418**

duties imposed on restaurant owners by these Acts were, unlike those imposed on the innkeeper, unknown at common law in the District.[14]   Although appellant has neither sought nor argued the possibility of relief on a theory of contract, on consideration we conclude that the facts as alleged here do not support a claim of this kind.  Cf. Thomas v. Pick Hotels Corporation, 10 Cir., 1955, 224 F.2d 664.  Accordingly the order of the trial court dismissing the complaint for failure to state a claim upon which relief can be granted is

Affirmed.

14. The common law distinction between restaurant owners and hotel-keepers has been described in several cases.  See, e. g., John R. Thompson Co. v. District of Columbia, 1953, 92 U.S.App.D.C. 34, 43, 203 F.2d 579; Alpaugh v. Wolverton, 1946, 184 Va. 943, 36 S.E.2d 906; Nance v. Mayflower Tavern, supra, note 12.