### JOYNER v. MOORE–WIGGINS CO., Limited.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1912.)

1. CIVIL RIGHTS (§ 2*)—CONSTITUTIONAL AND STATUTORY PROVISIONS.

    The Civil Rights Law (Consol. Laws 1909, c. 6) §§ 40, 41, was enacted with special reference to citizens of African descent, and was intended to secure to all persons, regardless of race, breed, or color, full and equal enjoyment of the privileges and facilities furnished by carriers, innkeepers, theaters, etc.

    [Ed. Note.—For other cases, see Civil Rights, Cent. Dig. §§ 1–10; Dec. Dig. § 2.*]

2. CIVIL RIGHTS (§ 6*)—DISCRIMINATION AS TO PUBLIC ACCOMMODATIONS—THEATERS—STATUTES.

    Civil Rights Law (Consol. Laws 1909, c. 6) § 40, entitles all persons to full and equal accommodations and privileges in theaters, etc., and section 41 provides that any person violating section 40 by denying to any citizen, except for reasons applicable alike to all citizens of every race and color, the full privilege of a theater, shall forfeit a certain sum at the suit of the person aggrieved. Defendant was the owner of a theater which sold plaintiff, a negress, a seat in the orchestra, and afterwards the manager decided to deprive her of the right to that seat on the ground that she was a negress, but offered her a balcony seat, selling for the same price as orchestra seats, affording an equally good view of the performance. *Held*, in a suit by plaintiff, that, under the statute, defendant was liable.

    [Ed. Note.—For other cases, see Civil Rights, Cent. Dig. § 9; Dec. Dig. § 6.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. THEATERS AND SHOWS (§ 4*)—CONDUCT OF BUSINESS—RULES.
  The manager of a theater has the right to adopt reasonable rules and regulations in the conduct of his business.
  [Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 4; Dec. Dig. § 4.*]

4. CIVIL RIGHTS (§ 14*)—ACTION FOR PENALTIES—SUFFICIENCY OF EVIDENCE—DISCRIMINATION.
  Evidence in an action for a penalty brought under the Civil Rights Law (Consol. Laws 1909, c. 6) §§ 40, 41, held sufficient to support a finding that defendant did not afford plaintiff, a negress, full and equal facilities for observing the performance in its theater.
  [Ed. Note.—For other cases, see Civil Rights, Cent. Dig. §§ 11, 12; Dec. Dig. § 14.*]

5. CIVIL RIGHTS (§ 14*)—ACTION FOR PENALTIES—ADMISSIBILITY OF EVIDENCE.
  In an action for a penalty brought under Civil Rights Law (Consol. Laws 1909, c. 6) §§ 40, 41, denying plaintiff, a negress, the right to occupy a rear seat in the orchestra at a theater because of her color, evidence as to whether there was a greater public demand for seats in the front rows of the balcony where she was offered a seat than for the seat which plaintiff had purchased was immaterial.
  [Ed. Note.—For other cases, see Civil Rights, Cent. Dig. §§ 11, 12; Dec. Dig. § 14.*]

Appeal from Trial Term, Monroe County.

Action by Susan M. Joyner against the Moore-Wiggins Company, Limited. From a judgment for plaintiff, and from an order denying a motion for a new trial upon the minutes of the court, defendant appeals. Judgment and order affirmed.

The action was commenced on the 25th day of May, 1910, to recover from the defendant the penalty provided by sections 40 and 41 of article 4, c. 6, of the Consolidated Laws, known as the "Civil Rights Law."

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

James M. E. O'Grady, of Rochester, for appellant.
Louis E. Fuller, of Rochester, for respondent.

McLENNAN, P. J. The material facts are not in dispute. It appears that the plaintiff, who is a negress, went to the Temple Theater, so called, of which the defendant is the owner, in the city of Rochester, on the 20th day of May, 1910, to attend a matinée performance; that she there purchased a ticket entitling her to a seat in the orchestra circle; that she entered the theater, and walked over to take her seat, when she was told by some person who came to her that she was wanted in the box office; that, when she got to the box office, she was told that they did not want her there; that she then returned to the theater, and was again told that she was wanted in the box office; that she went out again, and was told that the superintendent wanted to see her, and that she then went to the box office; that she was then told that she could not have the seat which she had purchased in the orchestra circle, but that she could have a seat in the balcony, or that

the defendant would refund her money upon her returning the coupon for her seat, both of which propositions the plaintiff refused, and insisted that she should have the seat in the orchestra circle, which the defendant denied. It further appears that the price of the seat which was sold to her was 25 cents, and that the same price was charged for seats in the balcony; that the seats in the balcony were equally available for the purpose of seeing and observing the performance as seats downstairs in the rear of the house, where the seat in question was located.

Sections 40 and 41 of article 4, c. 6, of the Consolidated Laws, known as the Civil Rights Law, provide as follows:

."Sec. 40. Equal Rights in Places of Public Accommodation or Amusement. All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of inns, restaurants, hotels, eating houses, bath houses, barber shops, theaters, music halls, public conveyances on land and water and all other places of public accommodation or amusement, subject only to the conditions and limitations established by law and applicable alike to all citizens.

"Sec. 41. Penalty for Violation. Any person who shall violate any of the provisions of the foregoing section by denying to any citizens, except for reasons applicable alike to all citizens of every race, creed or color, and regardless of race, creed and color, the full enjoyment of any of the accommodations, advantages, facilities or privileges in said section enumerated, or by aiding or inciting such denial, shall for every such offense forfeit and pay a sum not less than one hundred dollars nor more than five hundred dollars to the person aggrieved thereby, to be recovered in any court of competent jurisdiction in the county where said offense was committed; and shall, also, for every such offense be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than one hundred dollars nor more than five hundred dollars, or shall be imprisoned not less than thirty days nor more than ninety days, or both such fine and imprisonment."

The evidence in this case shows that, after the defendant sold the plaintiff the seat in the orchestra circle, its manager concluded to deprive the plaintiff of such seat on the ground that she is a negress, but the defendant contends that in view of the fact that such manager offered the plaintiff another seat, equally available for the purpose of witnessing the performance, the defendant did not deny to the plaintiff the "full and equal accommodations, advantages, facilities and privileges of * .* * theaters" as provided by the statute above quoted.

[1] The intent and object of the statute was to secure to all persons, regardless of race, creed, or color, full and equal enjoyment of the privileges and facilities therein set forth. As stated in the case of People v. King, 110 N. Y. 418, at page 423, 18 N. E. 245, at page 246 (1 L. R. A. 293, 6 Am. St. Rep. 389):

"This legislation is under what, for lack of a better name, is called the police power of the state, a power incapable of exact definition, but the existence of which is essential to every well-ordered government. By means of this power the Legislature exercises a supervision over matters involving the common weal and enforces the observance, by each individual member of society, of the duties which he owes to others and to the community at large. It may be exerted whenever necessary to secure the peace, good order, health, morals, and general welfare of the community, and the propriety of its exercise within constitutional limits is purely a matter of legislative discretion with which the courts cannot interfere. In short, the police power

covers a wide range of particular unexpressed powers reserved to the state affecting freedom of action, personal conduct, and the use and control of property."

In that case the constitutionality of section 383 of the Penal Code, which contained practically the same wording as the statute in the case at bar, was under consideration. As to the purpose of the statute the court said (110 N. Y. page 424, 18 N. E. page 247, 1 L. R. A. 293, 6 Am. St. Rep. 389):

"It cannot be doubted that it was enacted with special reference to citizens of African descent, nor is there any doubt that the policy which dictated the legislation was to secure to such persons equal rights with white persons to the facilities furnished by carriers, innkeepers, theaters, schools and places of public amusement."

[2] In the case at bar, the defendant, through its agents, sold to the plaintiff a ticket entitling her to a seat in the orchestra circle. This ticket constituted the evidence of her right to occupy such seat, and was an assurance to her on the part of the defendant that she could witness the performance in such theater in the seat designated upon the ticket which was sold to her, and she was entitled to view the performance from that seat without interference because of her race, creed, or color. She was entitled to the seat which she purchased, unless by her own personal misconduct it became necessary, in the reasonable conduct of the defendant's business, to eject her from the theater. But it appears in this case and the inference is quite strong that, after she entered the theater for the purpose of taking her seat, she was twice called to the box office, and there informed that she must occupy another seat in the theater or leave it, for the sole reason that she was a negress. This action on the part of the defendant's employés, as it seems to me, comes within the condemnation of the statute above quoted.

The defendant's counsel calls attention to various cases on the subject, but in none of them does it appear that the defendant first sold a ticket entitling the holder to a particular seat, and thereafter rescinded its action, and refused to permit the person owning such ticket to occupy such seat on the ground that the purchaser was a negress or not a white person.

[3] There is no doubt about the proposition that the management of a theater has the right to adopt reasonable rules and regulations in the conduct of its business. There is also no doubt about the proposition that the management of a theater has no right to discriminate against people because of their race, creed, or color.

[4] In this case the plaintiff claimed that the defendant did not afford to her full and equal facilities for observing the performance in its theater and the defendant claimed that it did. That was the only question which was submitted to the jury and it found in favor of the plaintiff, and, as it seems to me, such finding was amply supported by the evidence. To state the case again, it appears in this case that the only reason for the defendant's refusal to permit the plaintiff to occupy the seat in the orchestra circle which she had purchased and paid for was because she is a negress, and for such inter-

ference with the plaintiff the defendant is liable to the penalty fixed by the jury in this case.

[5]. The defendant's counsel also urges that the court erred in excluding evidence as to whether or not there was a greater demand upon the part of the public for seats in the front rows of the balcony than for the rear seats downstairs. This evidence in my opinion was properly excluded on the ground that it is immaterial, the question at issue being whether or not the plaintiff was denied the right to occupy the seat which she had purchased by reason of her color, and, if so, whether such denial came within the prohibition of the statute. The demand of the public for seats certainly is not material as to whether the plaintiff was denied equal privileges or rights under the facts in this case.

It follows, therefore, that the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.