BOLDEN *v.* GRAND RAPIDS OPERATING CORPORATION.

1. CIVIL RIGHTS—DISCRIMINATION AGAINST RACES—POLICE POWER
   —STATUTES—CONSTITUTIONAL LAW.
   Act No. 130, Pub. Acts 1885, as amended by Act No. 375,
   Pub. Acts 1919, commonly known as the "civil rights
   act," providing against discrimination in persons because
   of race, creed, or color, in regard to accommodations and
   privileges of inns, restaurants, theaters, etc., and pro-
   viding a penalty for violation thereof, is a valid exercise
   of the police power.

2. CONSTITUTIONAL LAW—POLICE POWER—WHEN USE OF PRIVATE
   PROPERTY MAY BE SUPERVISED.
   Under the police power, supervision may be exercised over
   the use of private property, when the health, morals, or
   welfare of the public demands it, and, when within the

[1]Civil Rights, 11 C. J. §§ 8, 19; 1 L. R. A. (N. S.) 1188; 5
R. C. L. 588; 26 R. C. L. 712; [2]Constitutional Law, 12 C. J. §§
431, 442.

scope of its constitutional power, courts will not assume to interfere with the propriety of its exercise.

3. CIVIL RIGHTS—PURPOSE OF "CIVIL RIGHTS ACT."
   The intent and purpose of the "civil rights act" is to prevent discrimination against any person because of race, creed, or color, having special reference to negroes, in the matter of accommodations in places of public amusement, recreation, etc., where the general public is invited to attend, but does not prevent excluding the rough, boisterous, and rowdyish element.

4. SAME—NEGROES—ONE BELONGING TO CLASS FOR WHOSE BENEFIT STATUTE ENACTED HAS RIGHT OF ACTION FOR ITS VIOLATION.
   A negro who was refused a ticket to a public theater in violation of the "civil rights act," has a right of action for damages therefor, although said statute is a criminal one and does not in terms confer said right, since he belongs to the class of persons for whose benefit it was enacted.

Error to superior court of Grand Rapids; Verdier (Leonard D.), J.    Submitted April 15, 1927.    (Docket No. 112.)    Decided June 6, 1927.

Case by Emmett N. Bolden against the Grand Rapids Operating Corporation for exclusion from a theater. From an order of dismissal plaintiff brings error. Reversed and remanded.

*Oliver M. Green (Jewell, Face & Messinger, of counsel), for appellant.*

*Butterfield, Keeney & Amberg, for appellee.*

SHARPE, C. J.    The first two sections of Act No. 130, Pub. Acts 1885, as amended by Act No. 375, Pub. Acts 1919, being sections 15570, 15571, Comp. Laws Supp. 1922, read as follows:

"§ 15570.    SECTION 1.    All persons within the jurisdiction of this State shall be entitled to full and equal    accommodations,    advantages,    facilities    and

---

³Civil Rights, 11 C. J. § 8 (Anno); ⁴Id., 11 C. J. §§ 22, 23.

privileges of inns, restaurants, eating houses, barber shops, public conveyances on land and water, theaters, motion picture houses and all other places of public accommodation, amusement and recreation and all public educational institutions of the State subject only to the conditions and limitations established by law and applicable alike and to all citizens.

"§ 15571. Sec. 2. Any person being an owner, lessee, proprietor, manager, superintendent, agent or employee of any such place who shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities and privileges thereof or directly or indirectly publish, circulate, issue, display, post or mail any written or printed communications, notice or advertisement to the effect that any of the accommodations, advantages, facilities and privileges of any such places shall be refused, withheld from or denied to any person on account of race, creed or color or that any particular race, creed or color is not welcome, objectionable or not acceptable, not desired or solicited, shall for every such offense be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than fifteen dollars or more than one hundred dollars or shall be imprisoned in the county jail for not less than ten days nor more than ninety days or both such fine and imprisonment in the discretion of the court."

The plaintiff, a dentist by profession, is a colored man, a native-born American citizen. The defendant is a corporation. It conducts and operates a theater in the city of Grand Rapids. Plaintiff sought to procure a ticket entitling him to a seat on the first floor. He was denied the privilege of doing so, solely because of his color and race. In this action he seeks to recover damages for such exclusion. Defendant's motion to dismiss for the reason that the declaration did not state a cause of action was granted. Plaintiff reviews the judgment entered by writ of error.

Two questions are presented:

(1) Is the act constitutional?
(2) If so, does it confer a right of action for its violation?

1. The act in question is usually called the "civil rights act." Its purpose is apparent. While it applies to "all persons within the jurisdiction of this State," it cannot be doubted that it was enacted with special reference to those of African descent. It clearly provides against discrimination on the part of those conducting theaters by withholding from or denying to colored people the accommodations, advantages, facilities, or privileges accorded to others. The power of the legislature to so provide rests upon its so-called police power. The existence of this power and the enactment of laws pursuant to it are necessary to the well-being of the people of all civilized communities.

"Courts have consistently and wisely declined to set any fixed limitations upon subjects calling for the exercise of this power." *People* v. *Brazee,* 183 Mich. 259, 262 (L. R. A. 1916E, 1146).

As was said by Shaw, C. J., in *Commonwealth* v. *Alger,* 7 Cush. (Mass.) 53, 85:

"The power we allude to is rather the police power, the power vested in the legislature by the constitution, to make, ordain, and establish all manner of wholesome and reasonable laws, statutes, and ordinances, either with penalties or without, not repugnant to the constitution, as they shall judge to be for the good and welfare of the Commonwealth."

"It is elementary that all property is held subject to the general police power to regulate and control its use so as to secure the general safety." *Peninsular Stove Co.* v. *Burton,* 220 Mich. 284, 286.

Under it supervision may be exercised over "the use of private property, when the health, morals, or welfare of the public demands it." *People* v. *Smith,* 108 Mich. 527 (32 L. R. A. 853, 62 Am. St. Rep. 715). And when within the scope of its constitutional power, courts will not assume to interfere with the propriety of its exercise.

239—Mich.—21.

Our State legislature has enacted many such laws. Among those affecting theaters are provisions for fire escapes, for ample means of egress, and that the doors in the halls thereof shall be made to open outward. These serve to illustrate by example the broad distinction between regulatory laws clearly within the police power and those by which it is sought to regulate and control the conduct of a private business, based on the claim that it is of such a character that it is clothed with a public interest and therefore subject to regulation by the public. A discussion of the validity of the latter class will be found in *Wolff Packing Co.* v. *Industrial Court,* 262 U. S. 522 (43 Sup. Ct. 630, 27 A. L. R. 1280) ; *Michigan Public Utilities Comm'n* v. *Duke,* 266 U. S. 570 (45 Sup. Ct. 191, 36 A. L. R. 1105) ; *Tyson* v. *Banton,* U. S. Adv. Ops. 1926, 27, p. 493 (47 Sup. Ct. 426).

As it is upon these and like cases that defendant places reliance, it may be well to state the issues on which they were decided. In the *Wolff Case,* the constitutionality of what is known as the industrial relations act of Kansas was considered. This act declared certain industries, among them the manufacture and preparation of food for human consumption, to be affected with a public interest, and vested in the court created by it the power to adjust the wages of workmen engaged therein. Chief Justice Taft stated the essence of the act to be:

"It curtails the right of the employer on the one hand, and of the employee on the other, to contract about his affairs."

And added:

"This is part of the liberty of the individual protected by the guaranty of the due process clause of the Fourteenth Amendment."

The *Michigan Public Utilities Commission Case* involved the power of the State legislature to regulate

and control those engaged in the business of transporting persons or property from certain points in Michigan to cities in Ohio, and it was held that the regulations imposed were "a burden upon interstate commerce," and that it was—

"beyond the power of the State by legislative fiat to convert property used exclusively in the business of a private carrier into a public utility, or to make the owner a public carrier, for that would be taking private property for public use without just compensation, which no State can do consistently with the due process of law clause of the Fourteenth Amendment."

In the *Tyson Case*, an effort was made by legislation in the State of New York to declare that the charge for admission to theaters was a matter of public interest and to regulate the price for which tickets thereto should be sold, and it was held that the public had no such interest in the business as would permit its control in that way by the legislature under its police power.

The validity of the act in question is in no way affected by these decisions.    The intent and purpose of the legislature in its enactment cannot be doubted. It clearly indicates a belief on their part that the public safety and general welfare of our people demand that, when the public are invited to attend places of public accommodation, amusement, and recreation, there shall be no discrimination among those permitted to enter because of race, creed or color.    It is bottomed upon the broad ground of the equality of all men before the law.    It does not provide that all persons who present themselves at a theater must be admitted. The proprietor may exclude "the rough, boisterous, and rowdyish element."    *Meisner* v. *Detroit, etc., Ferry Co.,* 154 Mich. 545 (129 Am. St. Rep. 493).

In our opinion, the act is a valid regulation imposed by the State in its exercise of the police power.

In *Ferguson* v. *Gies,* 82 Mich. 358 (9 L. R. A. 589,

21 Am. St. Rep. 576), it was held that recovery might be had under this act against the keeper of a restaurant who refused to serve a colored man in the same part of the building in which white people were served. The constitutionality of the act was not raised in that case, but it may be assumed that it was not overlooked by defendant's counsel.

Many of the other States have civil rights acts, with provisions quite similar to that here considered. They have, so far as we are able to ascertain, been uniformly upheld. See citations in the *Ferguson Case, supra.* What are perhaps regarded as the leading cases in which the constitutional question was discussed are *People* v. *King,* 110 N. Y. 418 (18 N. E. 245, 1 L. R. A. 293, 6 Am. St. Rep. 389), and *Donnell* v. *State,* 48 Miss. 661 (12 Am. Rep. 375). In the former it was said:

"But the law in question simply insures to colored citizens the right to admission, on equal terms with others, to public resorts and to equal enjoyment of privileges of a *quasi*-public character. The law cannot be set aside, because it has no basis in the public interest, and the promotion of the public good is the main purpose for which the police power may be exerted; and whether, in a given case, it shall be exerted or not, the legislature is the sole judge, and a law will not be held invalid because, in the judgment of a court, its enactment was inexpedient or unwise."

It was also pointed out that—

"The State could not pass a law making the discrimination made by the defendant. The amendments to the Federal Constitution would forbid it."

And the question was propounded:

"May not the State impose upon individuals having places of public resort the same restriction which the Federal Constitution places upon the State?"

And in the latter:

"The large subjects of the general welfare, safety,

happiness, and prosperity off the people of the State are committed to the legislature, to be advanced and promoted by legislation. \* \* \* In the nature of things, the legislature must judge finally and conclusively of the fitness and adaptation of a law to promote the general good and happiness of the people, and its conclusion is obligatory upon the courts."

See, also, *Joseph* v. *Bidwell,* 28 La. Ann. 382 (26 Am. Rep. 102); *Jones* v. *Broadway Roller Rink Co.,* 136 Wis. 595 (118 N. W. 170, 19 L. R. A. [N. S.] 907); *Jones* v. *Kehrlein,* 49 Cal. App. 646 (194 Pac. 55); *Greenberg* v. *Western Turf Ass'n,* 140 Cal. 357 (73 Pac. 1050); *Joyner* v. *Moore-Wiggins Co.,* 152 N. Y. App. Div. 266 (136 N. Y. Supp. 578), affirmed in 211 N. Y. 522 (105 N. E. 1088).

2. The claim of defendant's counsel in regard to the right of action is thus stated:

"The civil rights act is a criminal statute only, and does not give rise to an action for damages for its violation."

Counsel urge that "a theater is a private enterprise;" that "in the absence of statute the proprietor of a theater may exclude therefrom any persons whomsoever;" that plaintiff's right of action must be based solely on the violation of the statute; that no such right existed at the common law; that the statute does not in terms confer the right, and therefore the only liability of defendant for its violation is by criminal prosecution. This contention finds support in decisions in which certain acts and ordinances containing penal provisions, but expressly conferring no right of private action, were considered. We think, however, that there is a clear distinction between the effect of such regulatory provisions and those provided for in the civil rights act. In the former, the duty enjoined is merely for the benefit of the public, and the penalty is imposed to secure its enforcement. In *Taylor* v. *Railroad Co.,* 45 Mich. 74 (40 Am. Rep.

457), it was held that a city ordinance requiring the owner to keep his sidewalk free from ice would not support an action for damages for injury to one slipping and falling thereon.    It was there said:

"The nature of the duty and the benefits to be accomplished through its performance must generally determine whether it is a duty to the public in part or exclusively, or whether individuals may claim that it is a duty imposed wholly or in part for their especial benefit."

In *Lepard* v. *Railroad Co.*, 166 Mich. 373 (40 L. R. A. [N. S.] 1105), it was held that a violation of the statute requiring engineers to blow the whistles of their locomotives when approaching a highway crossing would not support an action by an employee working on the section because he was "not within the class intended to be protected by the statute." It was also said:

"It is a well-established principle that the violation of a statutory duty is the foundation of an action in favor of such persons only as belong to the class intended by the legislature to be protected by such statute."

The doctrine was stated in other words in *Sterling* v. *Union Carbide Co.*, 142 Mich. 284, 287, as follows:

"There are, however, numerous cases in this State which declare and apply the well-recognized rule that, where a statute requires an act to be done or abstained from by one person for the benefit of another, an action lies in favor of the latter for a failure to observe the requirements of the statute."

A number of cases are cited, including *Ferguson* v. *Gies, supra*.

In *Syneszewski* v. *Schmidt*, 153 Mich. 438, an action was brought on behalf of a child under 16 years of age, employed in violation of the statute, for injuries sustained in a tannery.    The court said, at page 441:

"It is the general rule that a civil action is maintainable where the person complaining is of a class entitled to take advantage of the law, is a sufferer from the disobedience, is not himself a partaker in the wrong of which he complains, or is not otherwise precluded by the principles of the common law from his proper standing in court."

In the later case of *Sorenson* v. *Kalamazoo Auto Sales Co.,* 201 Mich. 318, the action involved the failure of the defendants to maintain an automatic gate at an elevator opening, as required by the statute, and was brought by an invitee against both the owner and the lessee.   Speaking for the court, Mr. Justice FELLOWS said:

"We are met at the threshold of this inquiry with the question common to both defendants, of whether this statute is available to the instant plaintiff.   It cannot be denied that a plaintiff seeking the benefit of a statute of this character must belong to the class for whose protection the law was passed; that the statute was designed to prevent such injuries as were suffered by the individual claiming the damages is essential."

The rule is thus stated in 1 C. J. p. 957:

"The true rule is said to be that the question should be determined by a construction of the provisions of the particular statute, and according to whether it appears that the duty imposed is merely for the benefit of the public, and the fine or penalty a means of enforcing his duty and punishing a breach thereof, or whether the duty imposed is also for the benefit of particular individuals or classes of individuals.   If the case falls within the first class the public remedy by fine or penalty is exclusive, but if the case falls within the second class a private action may be maintained; particularly where the injured party is not entitled, or not exclusively entitled, to the penalty imposed."

More particularly applicable to the present case is the following from 5 R. C. L. p. 604:

"In cases where there has been illegal discrimination the person aggrieved has clearly a civil right of action for damages, and this is true although the provision for the enforcement of a civil rights statute under which the complainant claims redress provides for a criminal prosecution only. This right accrues by virtue of the general rule that where a statute imposes upon any person a specific duty for the protection or benefit of others, neglect or refusal to perform the duty creates a liability for any injury or detriment caused by such neglect or refusal, if the injury or hurt is of the kind which the statute was intended to prevent."

*Ferguson* v. *Gies, supra,* has been already referred to. Counsel seek to minimize the effect of that decision by the claim that as an action under the common law would lie for exclusion from a restaurant, the civil rights act was immaterial to the decision. The authorities cited (*Nottage* v. *Sawmill Phœnix,* 133 Fed. 979, and *Denver, etc., R. Co.* v. *Norgate,* 141 Fed. 247, 258 [6 L. R. A. (N. S.) 981, 5 Ann. Cas. 448]) and relied on in support of this claim are cases involving statutes or ordinances of a public nature, in which individuals or classes are affected in the same manner as the public at large. While the statute here under consideration applies to all persons, the duty imposed on the defendant under it has application only to those who may apply for admission. They alone are concerned in its violation. They are the only ones who can suffer injury by reason thereof. It therefore seems clear to us that a person denied admission, in violation of its provisions, has a right of action for such damages as he sustained thereby.

The judgment for defendant is reversed and set aside, and the cause remanded. Defendant will have 20 days thereafter to plead issuably to the declaration. Plaintiff will have costs of this court.

BIRD, STEERE, FELLOWS, WIEST, and McDONALD, JJ., concurred. SNOW and CLARK, JJ., did not sit.