LIEUTENANT RAFAEL MURIEL ET AL., Plaintiffs and Appellees, v. SALVADOR SUAZO, Defendant and Appellant.

No. 10055.   Argued April 14, 1950.—Decided March 30, 1951.

*Juan B. Soto* and *Juan F. Soto* for appellant. *Hipólito Marcano* for appellees.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

This is a civil action for damages based on racial discrimination.

On the evening of August 14, 1943, plaintiffs, Rafael Muriel and his wife Paula Olavarría, Rafael Pérez García and his wife Juanita Velázquez, and Jorge Haddock and his wife Ana Delia Cordero, arrived at the Esquife Club—a public business dedicated to dancing and dining located at Lutz Avenue, Santurce—which belongs to and is administered by the defendant Salvador Suazo, in order to dine and enjoy the festivities that were being enjoyed there. Muriel— First Lieutenant in the United States Army, and Pérez García, Captain—were in uniform.

After parking their cars nearby they all went up the stairs to the dance hall on the second floor where they were stopped near entrance by the porter, Julio Díaz, who told them that he was very sorry but that they would not be able to enter the club because colored persons were not admitted, that it was an order from the defendant which he had to carry out. As a result, Pérez García stated that he wished to see the manager of the Club in order to know the reasons why colored persons were not admitted to the club. When defendant came, Pérez García informed him of what had occurred. The Manager ratified the porter's position insisting that in his business he did not allow colored persons, and that he was very sorry but they could not stay there since they were colored. Pérez García insisted on being admitted to the club, since on previous occasions he had gone there alone, and defendant had allowed him to enter. Suazo answered that this was his "attitude" in the matter. Muriel

then intervened informing Suazo that apparently he ignored the existence of a law which provided that no person shall be denied access to a public establishment because of religion, color, or race. Suazo replied that it was his own business and that the government had nothing to do with it. Muriel stated that he was an Army officer, to which defendant replied that he had nothing to do with the Army, that it was his club and that it was not patronized by colored persons.

The discussion, which was peaceful at the beginning grew bitter. As a consequence, many club patrons approached and gathered around plaintiffs and defendant in the bar, near the dance hall. In view of defendant's irrevocable decision, plaintiffs returned home with their wives. They left annoyed and ashamed, and in a nervous state as a result of the public humiliation to which they had been subjected. Defendant's as well as the porter's attitude caused them to suffer deep moral depression. For many months afterwards they refrained from visiting other public places of entertainment in the city, afraid that the incident might be repeated. It was the first time that such a thing had happened to them. That night Muriel's wife left the club crying and she was unable to go to work the next day. Muriel, himself, felt humiliated and suffered an inferiority complex he had never felt before. Haddock, who was an employee of the Condado Hotel, had to explain to his boss what had happened to him at the Esquife Club.

Such are the facts which were found proved by the trial judge to whom the parties, after a trial on its merits before an acting judge, submitted the case for decision on the transcript of the evidence introduced at the trial. The complaint was granted adjudging the defendant to pay to each plaintiff-husbands, for the conjugal partnership constituted by each of them with their respective wives, for damages caused to each member of the partnership, the amount of $1,000, a total of $3,000, plus costs, and $300 attorney's fees.

Feeling aggrieved by this decision defendant appealed before this Court and contends in his brief that the lower court erred: (1) in holding that the complaint alleged sufficient facts to constitute a cause of action; (2) that plaintiff-husbands did not claim damages for themselves but for the conjugal partnership; (3) in holding that plaintiff-husbands claim for the conjugal partnership, not only for the damages sustained by each one of them, but also for those sustained by their respective wives; (4) in finding proved the averments of the complaint; (5) in acting with passion and prejudice in considering and weighing the evidence and (6) in rendering judgment in favor of the plaintiffs.

Appellant makes two arguments in discussing his first assignment of error: (1) that the cause of action, if any, corresponds to the conjugal partnership and not individually to the plaintiffs and (2) that the damages alleged in the complaint are moral damages for mental sufferings and compensation cannot be granted unless such damages are accompanied by physical pains.

■■ An action for damages to one of the spouses belongs, actually, to the conjugal partnership and suit to recover them should be brought only by the husband as administrator of the community property. *Serra* v. *Transportation Authority*, 68 P.R.R. 581; *Valiente & Co.* v. *District Court*, 68 P.R.R. 491; *Guadalupe* v. *District Court*, 65 P.R.R. 275; *Segarra* v. *Vivaldi*, 59 P.R.R. 797; *Serrano* v. *González*, 68 P.R.R. 579; *Rivera* v. *De Martínez*, 70 P.R.R. 456; *Meléndez* v. *Iturrondo*, 71 P.R.R. 56; *Flit* v. *White Star Bus Line, Inc.*, 49 P.R.R. 139 and *Vázquez* v. *Valdés et al.*, 28 P.R.R. 431. But we are convinced, under the authority of *Meléndez* v. *Iturrondo, supra*, and *Serra* v. *Transportation Authority, supra*, that although the husbands brought action "for themselves and in representation" of their respective wives, they filed suit on behalf of the conjugal partnership—to which it belonged—as administrators of same, and not for themselves, individually, the representa-

tion of their respective wives being thus unnecessary and surplusage. The claim for damages was filed alleging not only the damages suffered by each of them individually but also those suffered by each of their wives. We do not agree, therefore, with appellant in his first assignment of error. For the same reasons we likewise dismiss the second and third errors.

■ Appellant is also wrong regarding the lack of cause of action because physical damages are not alleged in the complaint. The right to claim damages in *ex delicto* actions, for humiliations and mental sufferings, independent of the existence of physical damages, has been definitively established in this jurisdiction. *Rivera* v. *Rossi*, 64 P.R.R. 683; *Vélez* v. *General Motors Acceptance Corp.*, 59 P.R.R. 583 and *Mejías* v. *López*, 51 P.R.R. 20. And it is wise to remember that perhaps the damage caused by humiliation such as that caused to plaintiffs in this case, is of greater import than many of the damages caused by physical pains. It is in the soul of man—and not in the pigment of his skin— where the sensibilities and values of the spirit are nested, and they are always more deeply wounded by the impact of moral aggression than by the impact of physical attack.

■■ The appellant, nevertheless, alleges that no compensation should be granted for mental sufferings if they are not accompanied by physical pains when the cause of action is based on the violation of a special law which provides a penalty for said violation, and that when a statute creates a right and provides a remedy for its violation, such remedy is exclusive.

We are dealing here with a civil action against the defendant for the moral sufferings sustained by the plaintiffs, when the former denied them access, service, and like treatment in his public business place, because they were colored persons. Section 1(a) of the Civil Rights Act of Puerto Rico—Act No. 131 approved on May 13, 1943, provides:

"No person shall be denied in the Island of Puerto Rico any access, service and like treatment in public places and businesses and in the means of transportation because of any political, religious, race, or color question, or because of any other reason not applicable to all persons in general."

And § 2 of the same also provides:

"Any person who shall deliberately or by false reports or by any subterfuge violate any of the provisions hereof, shall be guilty of a misdemeanor, and shall be punished by a fine of not less than twenty-five (25) nor more than one hundred (100) dollars, or by imprisonment in jail for a term of not more than one hundred (100), nor less than ten (10) days, or by both penalties in the discretion of the court."

Although there are some authorities to the contrary, the general rule, however, is that a statute for the protection of civil rights, although a penal statute, does not bar a right of action for civil damages, for where the statute imposes upon any person a specific duty for the protection and benefit of others, his neglect to perform such duty creates a liability for any resulting injury. *Anderson* v. *Pantages Theatre Co.,* 114 Wash. 24, 194 Pac. 813; *Bolden* v. *Operating Corporation,* 239 Mich. 318, 214 N. W. 241; *Ferguson* v. *Gies,* 82 Mich. 358, 46 N. W. 718; 10 Am. Jur., Civil Rights, § 25, p. 918. See Annotation in 171 A.L.R. 920.

Although the Civil Rights Act of Puerto Rico makes its violation a misdemeanor, it is just as true that its fundamental purpose was, according to its statement of motives, to consecrate in a legislative piece of dynamic action—genuinely democratic—the doctrine embodied in the Declaration of Independence of the United States of America which recites "We hold these truths to be self-evident, that all men are created equal" expressly determining "certain fundamental civil rights concerning the enjoyment by all persons in general of the facilities offered by public places and businesses in Puerto Rico, which will protect and secure equality of rights for all persons in Puerto Rico, and the maximum enjoyment of the benefits to be derived by the citizens or residents of

Puerto Rico, from their condition as such, irrespective of differences of race and political or religious creed . . ." The Legislature, upholding those basic principles of democracy— bulkwark of the civilization which demands from its citizens the most loyal devotion to its principles—intended to discourage racial discrimination, and to protect man in this phase of his integral liberty, wording in a legislative doctrine that which, for natural reasons, was already one of the human rights in the conscience of all men in a free world. Fourteenth Amendment of the Constitution; § 2 of the Organic Act of Puerto Rico. The fact that the statute punished as an offense [1] the violation of the rights therein embodied, is no bar to the filing of a civil action for damages which, due to such violation and according to § 1802 of the Civil Code, any person has who suffers from damages. The error assigned is, therefore, groundless.

The fourth, fifth, and sixth assignments which refer to the weighing of the evidence, are also groundless. Since the lower court decided the case, as stipulated by the parties, on the testimony of the witnesses who testified before another judge, this Court is in the same position as the lower court to weigh the facts which appear from the record before us. *Gómez* v. *Trujillo,* 59 P.R.R. 470, 474; *Encarnación* v. *Salim,* 69 P.R.R. 715. We agree with the findings of fact of the lower court.

Judgment will be affirmed.

---

[1] *People* v. *Suazo,* 63 P.R.R. 869.