# Order

Michigan Supreme Court
Lansing, Michigan

July 29, 2005

Clifford W. Taylor
  Chief Justice

126333

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
  Justices

LOWELL R. FISHER, D.O.,
          Plaintiff-Appellant,

v                                                           SC: 126333
                                                            COA: 244678
                                                            Jackson CC: 97-081351-CZ
W.A. FOOTE MEMORIAL HOSPITAL,
          Defendant-Appellee.

_____/

On order of the Court, leave to appeal having been granted and the Court having considered the briefs and oral arguments of the parties, the order of January 13, 2005 which granted leave is VACATED and leave to appeal is DENIED because the Court is no longer persuaded the questions presented should be reviewed by this Court.

KELLY, J., dissents and states as follows:

A majority of the Court has decided that we improvidently granted leave to appeal in this case. I disagree. At issue is a jurisprudentially significant question: whether an osteopath may bring suit against a hospital for unlawful discrimination when the statute barring the discrimination provides no explicit individual remedy.

The Court of Appeals issued a published decision holding that no private cause of action exists. Because this Court now denies leave, the Court of Appeals decision will stand as binding precedent. But the Court of Appeals analysis is flawed. It finds that the statute contains remedies for the physician that are nonexistent.

Given that the question is significant and the Court of Appeals analysis is unsound, leave to appeal was correctly granted and this Court should address the merits of the case.

I would hold that the Public Health Code at MCL 333.21513(e) creates a private cause of action for physicians allegedly discriminated against by a licensed hospital because they were trained as osteopaths. Thus, I would reverse the decision of the Court of Appeals and remand the case to that Court for consideration of plaintiff's appeal.

FACTS

The surgery department of the defendant hospital had a written policy that required surgeons entitled to practice there to have ACGME-approved[1] training and American Board of Surgery certification. The department could waive the policy on a case-by-case basis. ACGME-approved training is available only to graduates of allopathic schools. Plaintiff is a board-certified osteopathic surgeon.[2] When he applied for staff privileges at the hospital, defendant denied his request.

Plaintiff then asked that the policy be waived, and defendant denied the request. It responded that plaintiff's training and experience were not reasonably equivalent to ACGME-approved training. It offered plaintiff the opportunity to supplement his application with information demonstrating that his training met the standards set by the surgery department, essentially the training of an allopathic doctor.

Plaintiff filed suit, alleging that defendant had violated the statutory requirement that, when granting staff privileges, hospitals not discriminate against physicians on the basis of their medical training as osteopaths. MCL 333.21513(e). The trial court granted summary disposition to the hospital and dismissed plaintiff's claim. It found that a hospital's staffing decisions were not subject to judicial review. Even if courts could review these decisions, it found, plaintiff failed to establish that he was subjected to discriminatory treatment because he is an osteopath. It noted that defendant regularly awarded staff privileges to osteopathic physicians.

The Court of Appeals affirmed in a published per curiam opinion. 261 Mich App 727 (2004). However, it used different reasoning than the trial court and concluded that no private cause of action exists for a violation of MCL 333.21513(e). The panel reasoned that the Public Health Code can be enforced adequately through other provisions in article 17. MCL 333.20101 *et seq.* (covering facilities and agencies). As a result, it held that plaintiff had no cause of action. Thus, it did not reach the issues adjudicated by the trial court.

THE STATUTE AND THE STANDARD OF REVIEW

The grant or denial of a motion for summary disposition is reviewed de novo. *J & J Farmer Leasing, Inc v Citizens Ins Co of America,* 472 Mich 353, 357 (2005). Statutory interpretation involves questions of law that are also reviewed de novo.

---

[1] Accreditation Council for Graduate Medical Education.

[2] Osteopaths are referred to as "DOs"; allopathic doctors are referred to as "MDs."

*American Alternative Ins Co, Inc v York*, 470 Mich 28, 30 (2004).

MCL 333.21513(e) is located in article 17 of the Public Health Code. It reads:

The owner, operator, and governing body of a hospital licensed under this article:

\* \* \*

(e) Shall not discriminate because of race, religion, color, national origin, age, or sex in the operation of the hospital including employment, patient admission and care, room assignment, and professional or nonprofessional selection and training programs, and *shall not discriminate in the selection and appointment of individuals to the physician staff of the hospital or its training programs on the basis of licensure or registration or professional education as doctors of medicine, osteopathic medicine and surgery, or podiatry.* [Emphasis added.]

### THE AVAILABILITY OF PRIVATE CAUSES OF ACTION

In reviewing questions of statutory construction, the Court's primary purpose is to discern and give effect to the Legislature's intent. *People v Morey*, 461 Mich 325, 329-330 (1999). When interpreting a statute to determine whether an implied private cause of action exists to remedy its violation, we have developed rules of construction to assist in discerning this intent. Those rules were summarized in *Pompey v Gen Motors Corp*,[3] where we stated that

[t]he general rule, in which Michigan is aligned with a strong majority of jurisdictions, is that where a new right is created or a new duty is imposed by statute, the remedy provided for enforcement of that right by the statute for its violation and nonperformance is exclusive.

Importantly, the *Pompey* Court summarized the longstanding exception to this "general rule":

There are two important qualifications to this rule of statutory construction: [The first is that in] the absence of a pre-existent common-law remedy, the statutory remedy is not deemed exclusive if such remedy is plainly inadequate . . . . [*Id.* at 553 n 14 (citations omitted).]

---

[3] 385 Mich 537, 552 (1971).

Thus, in determining whether MCL 333.21513(e) creates a private cause of action, two questions are presented. First, it must be determined whether the statute creates a new right in a particular class of persons. If that question is answered in the affirmative, the court must then address the second question whether the statutory remedy is adequate for the enforcement of that right or duty.

### THE PRIVATE RIGHT IMPLICIT IN MCL 333.21513(e)

This Court has long held that, where the Legislature intends to protect a particular class, an individual member of that class may pursue an action asserting a violation. Beginning in 1890 with *Ferguson v Gies*,[4] Michigan has consistently recognized that "whenever a particular equal protection right is recognized, whether by constitution, statute, or common law, then fused to that right is the right to pursue judicial relief." *Heurtebise v Reliable Business Computers, Inc*, 452 Mich 405, 422-423 (1996) (opinion of Cavanagh, J.) In *Bolden v Grand Rapids Operating Corp*,[5] we articulated the already longstanding rule that "'where a statute requires an act to be done or abstained from by one person for the benefit of another, an action lies in favor of the latter for failure to observe the requirements of the statute.'" (Citation omitted.)

With this time-honored rule in mind, I would address whether the Legislature intended MCL 333.21513(e) to protect only the public in general, or also to protect individual physicians from discrimination. If only the general public is protected, no private right is created in plaintiff, and he could have no private right of action. However, if individual physicians are specifically protected, plaintiff has a private right to be free from the proscribed discrimination and is entitled to some means of upholding that right. As the *Bolden* Court noted:

> "It is the general rule that a civil action is maintainable where the person complaining is *of a class entitled to take advantage of the law*, is a sufferer from the disobedience, is not himself a partaker in the wrong of which he complains, or is not otherwise precluded by the principles of the common law from his proper standing in court." [*Bolden*, at 327 (emphasis added; citation omitted).]

The Public Health Code as a whole is directed at protecting the general public. However, it is clear that the provision in question prohibits certain acts directed against particular individuals and classes of individuals. Unlike other provisions of the code,

---

[4] 82 Mich 358 (1890).

[5] 239 Mich 318, 326 (1927).

MCL 333.21513(e) speaks specifically in terms of individual physicians, barring discrimination in "the selection and appointment of *individuals* to the physician staff . . . ." (Emphasis added.)

In addition, under the doctrine of *noscitur a sociis*, "'a word or phrase is given meaning by its context or setting.'" *Koontz v Ameritech Services, Inc*, 466 Mich 304, 318 (2002) (citation omitted). In general, "words and clauses will not be divorced from those which precede and those which follow." *Sanchick v State Bd of Optometry*, 342 Mich 555, 559 (1955). It is significant that the ban on discrimination against osteopaths is set forth in the very sentence that contains the ban on discrimination based on traditionally protected characteristics.

Hence, the Legislature states that hospitals are not to engage in "traditional" forms of discrimination that are based on race, religion, color, national origin, age, or sex. In the same sentence it also states that individual osteopathic physicians are to be free from professional discrimination by hospitals that is based on their training as osteopaths.

Although MCL 333.21513(e) may not be viewed as a traditional civil rights act, that is of no particular moment. By its clear language it is designed, *inter alia*, to protect specific individuals from discrimination. As such, I have no trouble concluding that MCL 333.21513(e) constitutes an antidiscrimination provision. It creates the right of individual physicians to be free from discrimination and the concomitant duty on the part of hospitals not to discriminate against physicians because they are osteopaths.

Thus, plaintiff has a private right to be free from discrimination that is based on his osteopathic training. It is the same right that female, African-American, or Asian doctors have who seek but are denied privileges because of their race, gender, or national origin. The statute requires hospitals to treat doctors seeking privileges equally regardless of race, gender, national origin, or status as osteopaths.

In writing the statute in question, the Legislature presumably intended to end discriminatory hospital staffing decisions against physicians based on their education. The Legislature's focus on the individual shows that the public benefit of increased access to physicians with various kinds of training was a secondary consideration. Foremost was the Legislature's intention to protect osteopaths as identifiable victims of discrimination.

By placing the protection in the Public Health Code, the Legislature signaled that it intended to shield osteopaths from discrimination as osteopaths in the limited context of hospital staffing decisions. It was not the Legislature's intent to prevent members of the general public from discriminating against osteopaths because they are osteopaths in housing, entertainment, or other venues.

It was not the Legislature's intent to treat the protected category at issue in this case in the same manner as more traditional protected categories. Therefore, there is utterly nothing inappropriate about the Legislature's decision to insert a more limited civil rights protection for osteopaths in the Public Health Code.

Likewise, in MCL 333.21513(e), the Legislature has not prohibited a hospital from discriminating against an osteopath, as an osteopath, when assigning him or her to a hospital room as a patient. By contrast, the statute protects against discrimination in hospital room assignments that is based on protected characteristics such as race and gender. MCL 333.21513(e). Thus, it is logical that the limited protection for osteopaths from discrimination in hospital staffing decisions is written as it is and located in the Public Health Code rather than the Civil Rights Act. The former is specific, while the latter is comprehensive.

## THE LACK OF A PERSONAL REMEDY IN MCL 333.21513

The Public Health Code is complex. The requirements placed on medical facilities in article 17 alone are numerous. For example, this article requires medical facilities to inform the families of patients with Alzheimer's disease about the facility's philosophy, its staff training, and the type of activities provided. MCL 333.20178. It also requires that a facility possess the technical, diagnostic, and treatment services and equipment necessary to ensure safe health care. MCL 333.20141. Most provisions of the code are directed at protecting the public as a whole by requiring that medical facilities and agencies maintain safe policies, practices, and premises.

The particular section of the code of concern here does not contain an express penalty or remedy for noncompliance. The Court of Appeals pointed to other parts of article 17 that contain various penalties for violations of MCL 333.21513(e). It held that such penalties constitute an adequate means by which to enforce the protections in the statute.

However, under prevailing case law, the remedies available must make the individual whole. The penalties in other parts of article 17 are not "remedies" designed or adequate to make Dr. Fisher whole. None of them is available of right to an individual victim of discrimination. They are of little value to the individual osteopath who has suffered economic loss or damage to his or her reputation through conduct of the kind specifically prohibited by MCL 333.21513(e).

Moreover, merely because penalties are available to the state does not mean that the state will avail itself of them. As plaintiff argues, to suggest that the administrative authorities will revoke the license of the only hospital serving a community because one employee discriminated against a single individual is absurd.

Nor is it likely that the Legislature expected discrimination against osteopaths to be punished criminally. And injunctions are only useful against threatened future harm, not discrete acts of discrimination that have already occurred. Significantly, none of the "remedies" noted by the Court of Appeals requires a hospital that has discriminated against a person protected by MCL 333.21513(e) to provide redress for the individual illegally discriminated against.[6]

With that in mind, I note that, in *Bolden*, this Court observed:

> "The true rule is said to be that the question should be determined by a construction of the provisions of the particular statute, and according to whether it appears that the duty imposed is merely for the benefit of the public, and the fine or penalty a means of enforcing his duty and punishing a breach thereof, or whether the duty imposed is also for the benefit of particular individuals or classes of individuals. If the case falls within the first class the public remedy by fine or penalty is exclusive, but if the case falls within the second class a private action may be maintained; particularly where the injured party is not entitled, or not exclusively entitled, to the penalty imposed." [*Bolden, supra* at 327, quoting 1 CJ at 957).]

Here, the injured party, the osteopath allegedly unlawfully discriminated against, is not entitled, let alone *exclusively* entitled, to the penalty imposed, which is the administrative fine. As noted in the preceding paragraph, the only remedy likely actually to be imposed is such an administrative fine. It is the state, not the osteopath, that is entitled to the benefit of that "remedy."

Consequently, it is far-fetched to describe the penalties cited by the Court of Appeals as "remedies." Although stated in terms of the adequacy of the *remedy*, the Court of Appeals analysis actually focused on the administrative *consequences* to the offending hospital. It failed to discuss the relief that the statute affords to victims of

---

[6] It is likely that the only penalty that is going to be imposed for a violation of the statute is an administrative fine. Even if the other penalties mentioned, such as license suspension or revocation, were realistic possibilities, the Department of Community Health has the discretion to determine how to proceed. Its only statutory duty is to investigate. MCL 333.20176. The code simply provides a mechanism for bringing a violation to the attention of the regulatory agency charged with overseeing the statutory program. But that agency has the discretion to decide how, and even whether, to penalize a facility for noncompliance. Hence, the code does not set out a means of enforcement that vindicates the rights of *the injured physician*.

discrimination and whether an aggrieved osteopath has realistic access to the possibility of such relief. Because the Court of Appeals never considered whether the Legislature provided an adequate *remedy* to *plaintiff*, it failed to properly apply the test for determining whether a private right of action exists.[7]

In summary, the sanctions in the Public Health Code penalize a facility for noncompliance; they do not address the needs of the individual physician who has experienced discrimination. MCL 333.21513(e) creates a right on the part of identifiable victims not to be discriminated against. However, the penalty provisions found elsewhere in the code do not provide an adequate remedy for this individualized discrimination.

The administrative mechanism is of little value to an individual physician who has suffered irreparable economic loss and damage to reputation as a result of discriminatory conduct that violates MCL 333.21513(e). None of the remedies in the code serves, or even purports, to make a victim of discrimination whole. Thus, I do not believe that the "remedies" provided there are "adequate" to protect the rights of victims of unlawful discrimination in violation of MCL 333.21513(e). Accordingly, applying the state's rule of construction extending back more than a century, I would conclude that the Legislature intended, by writing MCL 333.21513(e), to allow a private cause of action.

Thus, I would hold that MCL 333.21513(e) creates a private cause of action for those who experience discrimination in hospital staffing decisions because of their status as osteopaths.

CONCLUSION

MCL 333.21513(e) makes it illegal to discriminate against individual osteopathic physicians in the granting of hospital privileges. In enacting that provision, the Legislature created a right in osteopaths to be free from discrimination and a duty on the

---

[7] Courts have always carefully distinguished penalties and individual remedies when considering whether to allow a private cause of action. Beginning with *Ferguson*, the Court noted that the common law in Michigan gave a plaintiff unjustly discriminated against a remedy that included a right of action for civil damages. Applying *Bolden* to the Public Health Code, there are public remedies for a hospital's noncompliance, e.g., the hospital can be fined or lose its license. But there is no remedy *for the individual physician* who is harmed by the noncompliance unless it is through a private cause of action. *Bolden* and *Ferguson* demonstrate that statutory fines, loss or suspension of a hospital's license, and threat of criminal prosecution are not remedies that reimburse damages suffered by aggrieved individuals.

part of hospitals to refrain from discriminating against osteopaths.

Once the Legislature creates a statutory right for a group not to be discriminated against, persons in that group are entitled to an adequate remedy for violations of the right. Because the Public Health Code contains no adequate remedy to enforce the protections contained in MCL 333.21513(e), it implicitly grants the individual discriminated against a private cause of action to obtain that protection. As an osteopathic physician allegedly aggrieved by such illegal discrimination, Dr. Fisher is entitled to bring an action for civil damages.

Thus, I would reverse the decision of the Court of Appeals. Because that Court did not address the grounds on which plaintiff appealed, I would remand the case to that Court for further consideration of plaintiff's claims of error.

CAVANAGH, J., joins the statement of KELLY, J.

MARKMAN, J., dissents and states as follows:

I respectfully disagree with the majority that leave to appeal has been improvidently granted in this matter. Rather, in light of the legal and judicial resources that have been expended by the parties and by this Court, in view of the continuing significance of the issues on which leave has been granted, and in the absence of any changed circumstances underlying this dispute, I would now resolve this matter. Justice Kelly has submitted a thoughtful analysis concerning the substantive issues in controversy. This Court would serve the Legislature and the legal community well to indicate where it is in agreement or disagreement with her analysis.

d0726



I, CORBIN R. DAVIS, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

_July 29_____, 200_5____    _____

Clerk